FOURT, J.
 

 This is an appeal from the judgment and from the order granting probation in a case involving forcible rape.
 

 In Count I of an information filed in Los Angeles County on August 14, 1958, the appellant was charged with a violation of section 261, subdivision 3, Penal Code in that he did on July 26, 1958, commit a forcible rape upon a named female, not his wife; in Count II he was charged with a violation of section 261, subdivision 1, Penal Code (statutory rape).
 

 On September 3, 1958, the defendant with counsel pleaded “Not Guilty.” On October 14, 1958, the case was called for and started to trial, witnesses testified. However, the jury could not agree after some four and one-half hours of deliberation and the court declared a mistrial and discharged the jury. The next trial was set for November 17, 1958, and actually started on January 26, 1959. A mistrial was ordered by the judge because the jury could not agree upon a verdict. Pursuant to what amounted to a stipulation the third trial was started on April 6, 1959. A jury found the defendant guilty of forcible rape and not guilty of statutory rape. On May 7, 1959, the proceedings were suspended and the defendant was placed on probation, part of the terms of probation being that he spend one year in the county jail.
 

 A résumé of the facts is as follows:
 

 The victim was 17 years of age and had never been married. In July of 1958 she worked for the defendant as a baby sitter.
 
 *686
 
 On July 26, 1958, she returned to the home of the defendant about 1:30 a.m. Later, that same early morning the defendant arrived home, assaulted her and forcibly had sexual intercourse with her. The defendant had come to the victim’s bedroom and was told by her to get out, the victim was screaming and fought off the defendant as he wrestled with her. The defendant threatened to kill her and did choke her. He got on top of her and attempted to take off her undergarments and finally did remove the garments and did have sexual intercourse with her.
 

 At the trial, the victim was relating all of the details as to what had occurred to her and a question as follows was asked, “Have you ever had intercourse with anybody in your life, before that episode?” and the victim answered, “No.”
 

 After the forcible act of sexual intercourse, the victim was crying and bleeding and she fled to the home of Mr. and Mrs. Bateman who resided about two blocks from the residence of the defendant in Burbank. Mr. Bateman was supervising engineer for the Post Office Department in Burbank and saw the victim at 2:20 a.m. July 26, 1958. The victim was “hysterical and crying” and was difficult to understand. Mr. Bateman and his wife got up and took the victim in their car to the home of the victim in Burbank, some 2 or 3 miles away. During the trip to her house in the automobile the victim cried and made complaint about what had happened to her.- The stepfather of the victim made a crime report to the Burbank Police Department.
 

 Albert Madrid, a Burbank Police Department officer and his officer partner stopped the defendant as a possible drunk driver at 1:46 a.m. on July 26, 1958, at an intersection, 11 blocks from the defendant’s home. The defendant at that time was alone. The officers could smell liquor on his breath but they determined that, in their opinion, he was not drunk at the time and thereupon told the defendant “to go to his home before he became involved in something. ’ ’
 

 Officer Madrid saw the victim at the police station at about 2:45 a.m. and talked briefly with her and she made complaint at that time about what had occurred to her. She was then taken to St. Joseph’s Hospital in a police car. Officer Madrid and his partner went to the residence of defendant about 3 :15 a.m. and examined the premises. The officers found the bed in the rear bedroom was “pushed away from the wall and most of the bed clothing was on the floor.” On the mattress
 
 *687
 
 and the sheets there were reddish-brown spots. Officer Madrid talked to the defendant later at the jail where the defendant stated in effect that upon being stopped by the officers in the first instance he had driven the pickup truck he was then driving to the front of and across the street from his house and had gotten out of the pickup truck to make it appear to the police that he was not driving any farther and he was going into his house. He stated further that he had not gone into the house and then described the route which he had thereafter taken. In a later statement the defendant related that he saw a man in the yard on his premises when he drove by but he could give no description of any such person.
 

 A doctor made a vaginal examination upon the victim about 3 a.m. on July 26, 1958. His findings included a recently torn hymen with fresh bleeding and that she was a virgin prior to the night of July 26, 1958. Swabs were taken of the victim and spermatozoa and red blood cells were found thereon.
 

 Appellant contends that (1) the introduction of evidence as to the previous chaste character of the victim was prejudicial to the defendant; (2) that it was error to permit the officer to testify as to the identity of defendant as the perpetrator of the crime, and (3) that there were inflammatory remarks made by the prosecutor to the jury which constituted prejudicial misconduct.
 

 The defense of the defendant was that of an alibi and a complete denial of any act whatsoever upon or to the victim.
 

 Appellant made no objection to any evidence about the chastity of the victim, he made no motion to strike such testimony, he made no request for any instruction on the matter nor did he make a motion for a mistrial. Nor could counsel contend that he was surprised by any such testimony for the case had been tried twice before. Furthermore, counsel for the appellant asked the victim, “. . . you ever had an act of intercourse before?” and the victim answered, “No.”
 

 In
 
 People
 
 v.
 
 Pollock,
 
 25 Cal.App.2d 440, 443-444, it is said [77 P.2d 885] :
 

 “. . . exception is taken to the testimony of the physician who examined the victim immediately following the commission of the alleged offense, and who testified that the hymen showed a fresh rupture which was still bleeding. From such testimony, appellant argues that evidence indirectly tending to prove previous chaste character was received in violation of the rule that previous chastity of the prosecutrix is pre
 
 *688
 
 sumed, and that evidence thereof is inadmissible in advance of an attack thereon. The argument is without merit. The evidence above referred to was clearly relevant and it is well settled that when evidence is admissible for one purpose it cannot be excluded because it does not satisfy the rules applicable to it in some other respect. Under such circumstances, a failure to request an instruction limiting the effect of such evidence forecloses relief on appeal. (10 Cal.Jur., p. 816.)” Appellant relies upon the case of
 
 People
 
 v.
 
 O’Brien,
 
 130 Cal. 1 [62 P. 297] and has set forth a part of one of the headnotes as being what the court stated in that case. In fact the court said at page 6 thereof:
 

 “On the examination of the prosecutrix in chief she was permitted to testify
 
 over the objection
 
 of the defendant, that prior to the occasion of the alleged offense by defendant she had never had sexual intercourse with anyone. This was error. No doubt—as held in the cases cited by the attorney general— the previous chastity or unchastity of the female alleged to be raped may be a material element for the jury to consider; but—as the court in this case instructed the jury—the previous chastity of the prosecutrix is presumed, and it is inadmissible, in advance of attack, to prove her good character, and still less to prove her innocence or specific acts of incontinence.
 
 (People
 
 v.
 
 Tyler,
 
 36 Cal. 526;
 
 People
 
 v.
 
 Rector,
 
 19 Wend. 579;
 
 People
 
 v.
 
 Gray,
 
 7 N.Y. 378;
 
 Dodd
 
 v.
 
 Norris,
 
 3 Camp. 519;
 
 Rex
 
 v.
 
 Clark,
 
 2 Stark. 241—a case of rape.) In general such evidence—as it simply affirms what is to be inferred—may not be prejudicial. But in this case evidence was subsequently introduced by defendant tending to prove that prosecutrix had been unchaste, and even tending to prove specific acts of unchastity, which she was not called to rebut.” (Emphasis added.) In the case before us, the defendant was, as heretofore stated, charged with forcible rape
 
 and
 
 statutory rape and whether such testimony would be proper in a statutory rape case is not particularly important here because the appellant was acquitted of that charge.
 

 Also, the evidence of the victim’s prior chastity might well have been relevant as a foundation for the medical evidence which tended to show the same fact. Appellant apparently makes no contention about the medical evidence and does not assign it as a ground for reversal. We have, therefore, assumed that any contention as to that particular evidence is abandoned. (See,
 
 People
 
 v.
 
 Turville,
 
 51 Cal.2d 620, 635 [335 P.2d 678] ;
 
 People
 
 v.
 
 Raines,
 
 66 Cal.App.2d 960, 963 [153 P.2d
 
 *689
 
 424];
 
 People
 
 v.
 
 Epstein,
 
 21 Cal.App.2d 488, 490 [69 P.2d 454].) We believe that under the particular circumstances of this case there was no prejudicial error in receiving the evidence with reference to the prior chastity of the victim.
 

 Considering next the second of appellant’s contentions. Counsel for appellant set forth in their brief what purports to be certain questions to and answers by Officer Madrid. The statement is made in the brief to the effect that the prosecutor was the examiner and this court is apparently supposed to believe that the prosecutor was asking the questions on direct examination. The record discloses that the examiner was counsel for the appellant and not the prosecutor. The reporter’s transcript in fact reads as follows:
 

 “Q. When you were at the premises of the defendant’s home yourself about 3 :15 you conducted some sort of search, did you, pull any drawers open, cupboards, anything of that nature? A. I don’t believe so. At that time
 
 (sic)
 
 were mainly concerned with finding Mr. Ross.
 

 “Q. Was Mr. Ross the only person you wished to interrogate about this crime
 
 1
 
 A. I beg your pardon ?
 

 “Q. When you first received notice of a complaint from Donna Walker from her parents, was there someone else aside from Mr. Ross that you wished to interrogate ? A. In regards to the-
 

 “Q. To the alleged rape ? A. No.
 

 ‘
 
 ‘
 
 Q. Nobody at all ? A. No, sir. ’ ’
 

 We will assume in this one instance that counsel for appellant made a mistake in the brief and that the misrepresentation to this court was not deliberate.
 

 The final contention of the appellant is that there were inflammatory remarks made by the prosecutor to the jury which resulted in prejudicial misconduct. The claims seem to fall into two categories. The first statement of the prosecutor referred to in appellant’s brief is as follows:
 

 “. . . and as judges it is extremely important that you not be sympathetic and on the other hand that you not be prejudiced against this defendant. Sympathy and prejudice have no place in a law suit and if I may use a colloquial expression, analyse this evidence and then let the chips fall where they may.” We see nothing wrong with such a statement if taken in context with the other remarks of the prosecutor.
 

 The remaining comments made by the deputy dis
 
 *690
 
 trict attorney of which the appellant complains have to do with what might have happened to the defendant had he pursued the same course of conduct with the daughters of some other men; that if defendant were permitted to go free it would be a miscarriage of justice and further that the prosecutor in effect made statements which were tantamount to an expression of his personal belief in the guilt of the defendant. All of the complained of statements went unchallenged in the trial court.
 

 The rule is stated in
 
 People
 
 v.
 
 Hampton,
 
 47 Cal.2d 239, 240-241 [302 P.2d 300] as follows:
 

 “The rule is established that unless the harmful results of misconduct of the district attorney cannot be obviated by appropriate instructions of the trial court, error cannot be predicated in this court on such alleged misconduct in the absence of (a) assignment of such misconduct as error; and (b) a request to the trial court to instruct the jury to disregard it.
 
 (People
 
 v.
 
 Sampsell,
 
 34 Cal.2d 757 at 764 [214 P.2d 813];
 
 People
 
 v.
 
 Byrd,
 
 42 Cal.2d 200 at 208 [3] [266 P.2d 505];
 
 People
 
 v.
 
 Tolson,
 
 109 Cal.App.2d 579 at 582 [3] [241 P.2d 32].)
 

 “In the present ease the foregoing rule is applicable. An examination of the entire record shows that the acts complained of are of such a character that an objection thereto and an instruction from the trial court to the jury to disregard the alleged misconduct would have obviated any prejudicial effect that the alleged improper remarks might have had.” The prosecutor and the judge repeatedly informed the jury that what was said by the lawyers for the respective litigants was not evidence. Examples are as follows: In the opening statement the deputy district attorney said:
 

 “. . . May I say at the outset that an opening statement is not evidence, nor are closing argument of counsel evidence.” At the conclusion of the opening statement the court said, “. . . the opening statement is not evidence in this case. . . . Please bear in mind that it is your duty as jurors to determine the facts in this case solely upon the basis of the evidence actually produced in the course of the trial and that statements of counsel are not evidence in this case.” In the prosecutor’s opening argument at the conclusion of the receipt of the evidence he said:
 

 “. . . what counsel might say in our arguments is not evidence. It is just our interpretation of what we think the evidence shows. ... let the chips fall where they may. . . .
 

 
 *691
 
 “. . . If you believe from the evidence in this case that he committed this offense, you find him guilty; if you believe from the evidence in this case that he did not commit the offense, you find him not guilty.”
 

 And, again:
 

 “Me. Rose : At the beginning of my argument I told you ladies and gentlemen that arguments of counsel are not evidence, in other words, what I say is not evidence. ...”
 

 At the conclusion of the prosecutor’s opening argument the Judge said:
 

 ‘ ‘ The function of an argument, of course, is merely to draw to your attention such inferences as he would draw or deduce from the evidence; and argument of counsel is not evidence in the case, as counsel has indicated to you. Insofar as you find the arguments of
 
 of
 
 both counsel or either counsel or any parties therefor of assistance to you
 
 of
 
 arriving at your deductions and inferences from the evidence you may take them into consideration if it can be done on a basis of a rational conclusion, but you as jurors will also bear in mind it is your duty to arrive at an independent finding of the facts based solely upon the basis of evidence actually produced in the course of trial and the rational deductions to be drawn therefrom. ’ ’
 

 At the conclusion of the final argument, the court said:
 

 “The Court : Ladies and gentlemen of the jury, as I indicated to you before, the purpose of argument of respective counsel is to draw to your attention such inferences as they respectively would say could be drawn from the evidence. Neither argument is evidence in the ease. And you must bear in mind it is your duty as jurors to arrive at an independent finding as to what the facts in this ease are, based upon the evidence and rational deductions and inferences to be drawn therefrom. If the argument of either counsel, parts of each or both assist in your arriving at your independent conclusion you may take them into consideration.
 

 “Please bear in mind that argument of counsel is not evidence in this ease. Counsel may argue
 
 there
 
 interpretation of the law in the course of arguments, ...”
 

 The court also gave full and complete instructions and among them the following:
 

 “. . . As to any statement made by counsel in your presence concerning the facts in the ease, you must not regard such a statement as evidence; provided, however, that if
 
 *692
 
 counsel for both parties have stipulated to any fact, you are to regard that fact as being conclusively proved; ...”
 

 We think there was no substantial error in the trial of this case, but even assuming that there was some error it does not appear, after a complete examination of the entire record, that the alleged errors complained of could have affected the substantial rights of the appellant or brought about a different verdict than otherwise might have resulted. Section 4% of article VI of the Constitution of California is controlling.
 

 The order granting probation is .affirmed.
 

 Wood, P. J., and Lillie, J., concurred.