[Crim. No. 13256. First Dist., Div. Four. Mar. 9, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH WAYNE WILEY, Defendant and Appellant.

**COUNSEL**

Roger N. Bolles, under appointment by the Supreme Court, and Albert Jonathan Wittwer, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and James D. Hurwitz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KEANE, J.**\*—This cause is again before the court pursuant to a transfer from the Supreme Court for reconsideration in the light of *People* v. *Lent* (1975) 15 Cal.3d 481, 484 [124 Cal.Rptr. 905, 541 P.2d 545].

Kenneth Wiley was charged with kidnaping (Pen. Code, § 207), robbery (Pen. Code, § 211), rape (Pen. Code, § 261), and oral copulation by force (Pen. Code, § 288a). Following a jury trial, he was found guilty of kidnaping and second degree robbery. The court declared a mistrial as to the charges of oral copulation and rape. Defendant appeals from the judgment of conviction.

On the evening of September 20, 1973, J. E. was driving past Telegraph Avenue in Oakland. She stopped the car when appellant and his brother, R. D., waved from across the street. J. E. agreed to take them to Providence Hospital, where R. D. was to have medical treatment for a leg injury. Upon appellant's request, J. E. stopped at a liquor store so that appellant could purchase some wine for his brother to ease his pain. After arriving at the hospital, J. E. and appellant drank a few sips of wine while R. D. received treatment inside. Appellant asked J. E. whether she had ever made love to a black man, whether she wished to make love with him, and stated that he wanted to kiss her. J. E. said no, but appellant pulled her to him and kissed her anyway. When J. E. told appellant that he would have to stop or get out, he apologized.

When R. D. returned, J. E. told them that she was on her way to visit a friend and agreed only to drop them off at a liquor store. Appellant bought some more wine at the store and asked to be driven home. J. E. agreed but told them that was all she would do. She followed appellant's directions through an industrial area in West Oakland and stopped the car briefly so that appellant could urinate. Appellant returned to the car and told her that he was going to drive. Although J. E. tried to brace

---

\*Assigned by the Chairman of the Judicial Council.

herself in her seat, appellant pushed her aside and said "You're going to give us some pussy." J. E. told him no, but appellant turned to his brother and said, "Well, then, you better get out a gun." R. D. made a motion as if he were pulling out a gun from his pocket. J. E. was too afraid to attempt an escape; she implored them not to hurt her. Appellant indicated that they would not hurt her if J. E. did what she was told.

J. E. and appellant moved to the back seat as R. D. offered to drive. Appellant fondled J. E.'s breasts and put his hand into her pants. R. D. stopped the car shortly thereafter. Appellant pulled off J. E.'s pants, handed them to his brother, and told him to look through the pockets. J. E. had been carrying a five dollar bill in her pants. While still in the back seat appellant forced J. E. to orally copulate him. She then followed appellant and had intercourse with him beside the car. R. D. proceeded to have sexual intercourse with J. E. after appellant returned. J. E. discovered that the five dollar bill was missing. When she asked why her money had been taken appellant replied, "We don't fuck for nothing." J. E. asked to be taken back to Telegraph Avenue so that she could go home. Over her objections, appellant told her that they would first go to purchase gasoline for her car. As they waited in line in a service station, appellant handed his brother a pair of handcuffs. J. E. felt "silently threatened." They then went to another station nearby. Appellant paid for gasoline with three one-dollar bills and J. E. drank several sips of wine in order to calm down.

Upon leaving the second station J. E. again demanded to be taken home. Appellant threatened to "drive us all off the road and kill us" if she did not remain quiet. They stopped briefly at two apartments, and the brothers continued to fondle J. E.'s breasts while she remained in fear of her life.

By coincidence, two Oakland police officers were looking for a robbery suspect when they observed that appellant resembled the man they were seeking. They drove up behind J. E.'s car. J. E. was told not to say anything. She managed, however, to signal one of the officers with her eyes. The officer observed R. D. turn and reach into his pocket. Fearing that R. D. was reaching for a weapon, the officer ordered him out of the car. J. E. got out, took the officer's arm, and said "Help me, they kidnaped me and raped me." The officer removed a set of handcuffs from the pocket into which R. D. had reached. A search of appellant disclosed a five dollar bill and a straight edged razor in his pants pocket.

The five dollar bill was returned to appellant and he and R. D. and one Michael Banks were placed in a patrol wagon summoned by the officers. After the patrol wagon had left the officer realized that the five dollar bill might be evidence and called the patrol car to retrieve it from appellant. When the wagon arrived at the city jail, the driver asked the jailer to look for a five dollar bill. By this time, however, a fourth occupant of the wagon, who had not been handcuffed, had been released without search. Previously she had been seen reaching into appellant's pocket and giving cigarettes to the other three suspects. The five dollar bill was never recovered.

Appellant testified on his own behalf. He admitted that most of the events as told by J. E. had actually occurred but claimed that J. E. had consented. While they were waiting for R. D. at the hospital, appellant testified, he offered to put three dollars of gas into her car if she would ride around with him, smoke some marijuana, drink some wine and engage in sexual intercourse with him. After leaving the hospital and buying some more wine, they went directly to the spot where appellant and J. E. had intercourse. Appellant denied ever engaging in oral copulation with J. E. or telling his brother to look through J. E.'s pants pockets. R. D. then had intercourse with J. E. Appellant testified that they thereafter went to the gas stations and to the two apartments with J. E.'s consent. He admitted knowing that his brother had a pair of handcuffs but denied seeing them on the evening in question. Appellant claimed the officer was lying when he testified that appellant had a five dollar bill in his pants pocket.

Appellant asserts that it was improper to permit impeachment by evidence indicating that he had previously been in police custody. Appellant, on direct examination, stated that he had given a statement to the police while in custody denying sexual relations with the prosecuting witness. This statement was in direct conflict with his testimony in court. One of his explanations, on cross-examination,[1] as to why he had lied in making the statement, was ". . . I told him what happened and I told him the only reason why I wasn't going to put down on those papers that I did have sex with her is because I was scared and didn't know what was happening, then in custody, and I assumed naturally the statement had never left the room where him and I were."

---

[1] On direct examination, appellant had stated that he had lied because he was accused of something that he had not done and was afraid.

In *People* v. *Lent,* 15 Cal.3d 481, 484 [124 Cal.Rptr. 905, 541 P.2d 545], the court stated: "When Mrs. Smith was on the stand as a prosecution witness, defendant's counsel sought to impeach her by inquiring into a five-year-old misdemeanor conviction. Upon objection being sustained, counsel made an offer of proof, conceding therein that his sole purpose was to reflect upon the credibility of the witness. [¶] From the celebrated case of *Sharon* v. *Sharon* (1889) 79 Cal. 633, 673-674 [22 P. 26, 131], to date, it has been hornbook law that testimony relating to specific instances of misconduct is inadmissible to attack the credibility of a witness. This has always been interpreted to require exclusion of evidence concerning prior misdemeanor convictions." The court pointed out that the only exception is specifically provided in Evidence Code section 788, which permits impeachment by a prior felony conviction and the current trend is toward limiting such impeachment.

The case at bar differs from *Lent,* in that *Lent* is the usual case of opposing counsel attempting to discredit a witness by offering evidence of a prior conviction that has no relation to the case at bar and is not within the scope of any question raised on direct examination.

 In the instant case, the basic issue was whether the appellant or the prosecution witness was telling the truth. The fact that appellant had lied on a material matter in making the statement to the police was relevant and it was proper for his attorney (Evid. Code, § 785) to attempt to support his credibility by asking appellant his reason for the false statement. The defense having offered a reason for the lie, the prosecution was then entitled to challenge that explanation. Appellant contends that the prosecution was attempting to impeach on a collateral matter, however, it was the defense that raised the subject of the false statement and explanation and the defense cannot complain that the prosecution pursued the subject on cross-examination.

 Appellant objects to the trial court's order permitting prosecutorial discovery of statements J. E. had made to the defense investigator. J. E. testified that she did not recall what she had told the investigator. The court ruled that the statement was discoverable to refresh J.E.'s recollection. It is asserted that the discovery order effectively denied appellant his constitutional rights to confrontation by permitting J. E. to resolve any potential inconsistencies between her trial testimony and prior statements.

A defendant in a criminal case has an unrestricted right to demand discovery in these circumstances. (*Vetter* v. *Superior Court* (1961) 189 Cal.App.2d 132, 136-137 [10 Cal.Rptr. 890].) However, discovery cannot be a completely "two-way street" since the prosecution is only entitled to discovery "to the extent permitted by constitutional principles." (Fn. omitted.) (*Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 323 [85 Cal.Rptr. 129, 466 P.2d 673].)

The guidelines for permissible prosecutorial discovery are set forth in *Prudhomme, supra,* at page 326: "[T]he principal element in determining whether a particular demand for discovery should be allowed is not simply whether the information sought pertains to an 'affirmative defense,' [fn. omitted] or whether defendant intends to introduce or rely upon the evidence at trial, but whether disclosure thereof conceivably might lighten the prosecution's burden of proving its case in chief."

In *People* v. *Chavez* (1973) 33 Cal.App.3d 454 [109 Cal.Rptr. 157], the court considered objections to prosecutorial discovery of statements of defense witnesses. The error in *Chavez* (albeit nonprejudicial) was that the trial court failed to examine the statements sought in order to separate impeaching matter from "other non-impeaching collateral matter which might be of assistance to the prosecution in proving its case . . ." (*Chavez, supra,* at p. 459.) In the case at bench, the trial court did examine the statement sought by the prosecution and found ". . . nothing in the witness' statement which would lighten the burden of the prosecution in the prosecution of the case and as such it is admissible."

Additionally, the situation in the instant case differs from *Chavez* in that here the district attorney was seeking the statement of a witness for the prosecution rather than the defense. The prosecution clearly used discovery to make itself more certain of information it already possessed. There was little probability that it could discover information which would lighten the burden of the prosecution. No error was committed in allowing the witness to refresh her memory by reviewing the statement she had given to the defense investigator.

■ Appellant complains that the trial judge improperly questioned him regarding his knowledge of the area where J. E. had picked up appellant and his brother. Appellant testified on direct examination that he and his brother were heading up Telegraph Avenue in the opposite direction from Providence Hospital, their intended destination. The court questioned appellant regarding this inconsistency. It was within the

discretion of the trial court to elicit further information and to clarify confusing testimony. (See Evid. Code, § 765; *People v. Rodriguez* (1970) 10 Cal.App.3d 18, 32-33 [88 Cal.Rptr. 789].) Appellant relies on the case of *People* v. *Huff* (1955) 134 Cal.App.2d 182 [285 P.2d 17]. The analogy is unpersuasive. In *Huff,* the inquiry bore directly upon appellant's sole defense. (134 Cal.App.2d at p. 188.) The court questioned the defendant extensively and interrupted closing argument to point out inconsistencies in the defense. (134 Cal.App.2d at pp. 184-187.) Here, however, the trial court's inquiry was brief and the questions did not bear directly on appellant's defense of consent. The court's comments in *Huff* were far more contentious than those in the present case. While the trial court's remark that appellant prowled up and down Telegraph Avenue was somewhat intemperate, that isolated reference was not so prejudicial as to deprive appellant of a fair trial.

 It is next asserted that the robbery verdict was not supported by substantial evidence. There was ample evidence that the five dollar bill was taken by force or fear. J. E. testified that she was frightened by appellant's threats throughout the entire encounter. Appellant instructed his brother to look through J. E.'s pockets while she was in that state of mind. Appellant suggests that a finding of force is negated by the jury's failure to convict him of rape and oral copulation. The jury, however, would have been warranted in finding appellant guilty of rape and oral copulation upon the record developed at trial. It is probable that the failure to convict appellant of these charges was a product of the jury's mercy. (See *People v. Braun* (1973) 29 Cal.App.3d 949, 974 [106 Cal.Rptr. 56], cert. den., 414 U.S. 974 [38 L.Ed.2d 217, 94 S.Ct. 294]; *People v. De Priest* (1969) 2 Cal.App.3d 423, 431 [82 Cal.Rptr. 526].) Moreover, the verdicts were not necessarily inconsistent. The jury could have thought that J. E. initially resisted appellant's overtures but consented to intercourse after her pants had been removed.

It is also maintained that the taking of the five dollar bill was not in J. E.'s immediate presence as required by Penal Code section 211. This argument is without merit. In *People v. Fields* (1961) 190 Cal.App.2d 515, 519 [12 Cal.Rptr. 249], a rape victim asked for her purse. The defendant took the purse, examined its contents and took the money in the presence of the victim. *Fields* is indistinguishable from the present case except for the fact that J. E. did not actually see the removal of the five dollar bill. However, as the court indicated in *People v. Lavender* (1934) 137 Cal.App. 582 [31 P.2d 439], the act of robbery can be said to have occurred in the victim's presence as long as the victim perceived any

overt act connected with the commission of the offense. In *Lavender,* the defendants induced a hotel clerk to show them a room and tied him up therein prior to taking money from a cash drawer in another room. (137 Cal.App. at p. 584). The court stated, at page 591, that: "At least as early as the time when the clerk was induced to leave the hotel office for the purpose of 'showing' the room to defendant and his companion the crime of robbery was commenced; it was an overt act connected with the commission of the offense, at which time the clerk was 'immediately' present. The trick or device by which the physical presence of the clerk was detached from the property under his protection and control should not avail defendant in his claim that the property was not taken from the 'immediate presence' of the victim."

In the present case, J. E. testified that appellant removed her pants and instructed his brother to look through the pockets. She was then forced to engage in sexual intercourse with appellant. These steps were unquestionably overt acts connected with the taking of the five dollar bill. As in the *Lavender* case, the method by which the physical presence of the victim was detached from her property should not avail appellant in his claim that her property was not taken in her presence.

There is no merit to appellant's claim that the taking of the five dollar bill was not substantiated by the evidence. Appellant implicitly admitted that the bill had been taken when he said "We don't fuck for nothing" in response to J. E.'s demand for the return of the money; moreover, the officer testified that he found a five dollar bill when he searched appellant.

Appellant also contends that there was insufficient evidence to support the kidnaping verdict. He again alludes to an alleged inconsistency between that verdict and the jury's failure to find him guilty of rape. As indicated earlier, however, the failure to return a guilty verdict on rape was probably an act of mercy on the jury's part. Moreover, the jury could have found that J. E. had been forcibly taken around Oakland against her will, both prior and subsequent to the intercourse, even if they believed she had consented to the sexual act. Appellant also claims that the movement of the victim was only incidental to the commission of sexual intercourse. This argument must fail in view of the substantial possibility that the kidnaping verdict could have been based upon movement occurring after the act of intercourse. There was evidence that appellant again threatened J. E.; she was told by appellant that he would "drive us all off the road and kill us" if she persisted in demanding to be taken home.

Appellant asserts that it was error to exclude evidence of his physical condition. That evidence would purportedly have demonstrated that appellant could not have pushed J. E. away from the driver's seat without suffering extreme pain. But appellant's trial counsel did not indicate to the court that the evidence was admissible for that purpose. The trial court was entitled to be apprised of the direction of counsel's inquiry. Appellant cannot now claim that the evidence was improperly excluded. (See Evid. Code, § 354, subd. (a); cf. *People* v. *Coleman* (1970) 8 Cal.App.3d 722, 727-729 [87 Cal.Rptr. 554].)

Appellant complains that the prosecutor committed misconduct in several respects. ■ Prosecutorial misconduct refers to the use of deceptive or reprehensible methods to influence the jury. (*People* v. *Strickland* (1974) 11 Cal.3d 946, 955 [114 Cal.Rptr. 632, 523 P.2d 672].) "Misconduct of the prosecuting attorney may not be assigned as error on appeal if it has not been assigned at the trial unless, the case being closely balanced and presenting grave doubt of the defendant's guilt, the misconduct contributed materially to the verdict or unless the harmful results of the misconduct could not have been obviated by a timely admonition to the jury." (*People* v. *Varnum* (1969) 70 Cal.2d 480, 488 [75 Cal.Rptr. 161, 450 P.2d 553], cert. den., 406 U.S. 971 [32 L.Ed.2d 671, 92 S.Ct. 2416].)

■ It is alleged that it was improper for the prosecutor to tell the jury that appellant and his brother were armed with a gun. When read in context, however, the comment appears to have been made with reference to the facts as they appeared to J. E. Concededly, the prosecutor incorrectly told the jury during closing argument that appellant and his brother said they planned to leave the state. J. E.'s testimony to that effect was objected to for lack of a proper foundation. The objection was sustained, but the statement of the witness was never ordered stricken. It is conceivable that the prosecutor was confused as to what had or had not been admitted in evidence. In any event, the statement could have been cured by a timely admonition. No such admonition was requested.

Appellant complains of the prosecutor's charge that defense counsel attempted to mislead J. E. during cross-examination. The remarks were simply an attempt to diminish the impact of defense counsel's cross-examination and were therefore within the range of proper comment. (See *People* v. *Meneley* (1972) 29 Cal.App.3d 41, 60 [105 Cal.Rptr. 432].)

■ It is next argued that the prosecutor appealed to the prejudice of the jury by discussing the hardships of the prosecutrix in a rape case. These remarks may fairly be construed as an attempt to bolster the credibility of J. E. While the prosecutor's comment regarding the indignities J. E. would face in the event of a retrial was improper, it could have been cured by a timely admonition had one been requested.

Appellant alleges as misconduct the prosecutor's statement that failure to convict appellant would give him license to commit rape upon other women. Assuming that the comment was improper (*People* v. *Ross* (1960) 179 Cal.App.2d 684, 690-692 [4 Cal.Rptr. 73]), no prejudice to appellant appears. Appellant was not found guilty of the charges to which this remark was addressed.

■ Contrary to appellant's contention, the prosecutor did not express a personal belief in appellant's guilt. The prosecutor said: "Now, to start getting into some of the laws that you will have to consider in this case, first of all I would like to mention the burden of proof in this case. There is an excellent standard that is imposed in criminal law, and this is proof beyond a reasonable doubt, and I would like to say a few things about that. It is an excellent standard, one that we accept gladly, one we feel that we can meet, or we wouldn't take the case for trial, and certainly I don't feel that you can have any difficulty in having that burden met in this case." These remarks may fairly be construed as indicating the prosecutor's belief that he was capable of introducing sufficient evidence to prove appellant's guilt beyond a reasonable doubt. They do not imply that the prosecutor had knowledge of facts indicating appellant's guilt which could not have been shown in evidence, as prohibited by *People* v. *Bain* (1971) 5 Cal.3d 839, 848 [97 Cal.Rptr. 684, 489 P.2d 564], and *People* v. *Kirkes* (1952) 39 Cal.2d 719, 723-724 [249 P.2d 1].

■ Appellant contends that the jury was not properly instructed. His first contention relates to the trial court's failure to instruct the jury on theft, a lesser included offense of robbery. But there were no mitigating circumstances from which the jury could have concluded that the taking of the five dollar bill was theft rather than robbery. The trial court may refuse a requested instruction on lesser included offenses if the evidence indicates that the defendant, if guilty at all, was guilty of something beyond the lesser offense. (*People* v. *Stanton* (1969) 274 Cal.App.2d 13, at p. 18 [78 Cal.Rptr. 771].) The money was taken when J. E. was unquestionably frightened by appellant's threats. Appellant simply denied ever assisting his brother in the taking of the money.

Under these circumstances, the trial court committed no error in rejecting the instruction as inappropriate. (*People* v. *Stanton, supra,* 274 Cal.App.2d at pp. 17-18; *People* v. *Pruitt* (1969) 269 Cal.App.2d 501, 508 [75 Cal.Rptr. 125].)

■ Appellant also argues that the trial court erred in refusing to instruct the jury, as requested, on the lesser included offenses of kidnaping. While it has been said that "[T]he crime of false imprisonment is necessarily included in the crime of kidnapping" (*People* v. *Apo* (1972) 25 Cal.App.3d 790, 796 [102 Cal.Rptr. 242]), an instruction on false imprisonment is plainly inappropriate where, as here, the undisputed evidence indicates that the victim had been moved over substantial distances. If, as appellant contended at trial, the movement was with J.E.'s consent, then no crime at all was committed. If, on the other hand, the movement was without J. E.'s consent, then the offense committed was kidnaping since significant movement was present. False imprisonment "does not require the involuntary movement of the victim from one point in space to another point in space." (*People* v. *Gibbs* (1970) 12 Cal.App.3d 526, 547 [90 Cal.Rptr. 866].)

■ It is next contended that the trial court erred in refusing to give an instruction on voluntary intoxication (CALJIC Nos. 4.21-4.22). But appellant testified that he was not drunk when the crimes were committed. "The mere fact that a defendant may have been drinking prior to the commission of a crime does not establish intoxication or require the giving of a requested instruction thereon." (*People* v. *Turville* (1959) 51 Cal.2d 620, 633 [335 P.2d 678], cert. den., 360 U.S. 939 [3 L.Ed.2d 1551, 79 S.Ct. 1465]; accord, *People* v. *Miller* (1962) 57 Cal.2d 821, 830-831 [22 Cal.Rptr. 465, 372 P.2d 297]; *People* v. *Spencer* (1963) 60 Cal.2d 64, 87 [31 Cal.Rptr. 782, 383 P.2d 134].)

■ Appellant claims that the jury verdicts were coerced. On Friday, December 21, at 6:35 p.m., the jury was deadlocked on all counts by an average vote of seven to five after having deliberated for three and a half hours. The trial court then gave this instruction which appellant finds objectionable:

"THE COURT: Well, of course, you have to realize that in the event that you do not reach a verdict as to any count, of course, the case will eventually have to be retried, and we can't expect that we will have twelve more intelligent people than you ladies and gentlemen or that the

evidence will be any better the next time around, so in the interests of the People and the defendant and the taxpayers it is important that you reach a verdict, if you can do so without damage to your reasoning process, and for the reason you have only been out 3½ hours, I wish that you would continue to deliberate.

"Now the question is: Do you wish to continue tonight or the alternative would be that I would separate you—we are now allowed to do that—and bring you back Monday morning for further deliberations. Do you wish to consult with your fellow jurors and see which they prefer to do?

"I might say parenthetically if you go to dinner, of course, it will be an hour and a half when you return, and the hour will be late when you start deliberating, so do you wish to consult with your fellow jurors and see how they feel about it?

"THE FOREMAN: Yes.

"THE COURT: All right, you may do so.

(Inaudible discussion among the jurors.)

"THE FOREMAN: Tonight, Your Honor."

Instructions which urge the jury to reach a verdict have been upheld under far more aggravated circumstances. In *People* v. *Beaugez* (1965) 232 Cal.App.2d 650 [43 Cal.Rptr. 28], the trial court gave the jury the option of continuing deliberations or being locked up for the night. The jury chose to deliberate further and returned with a verdict an hour later. The verdict was upheld. (232 Cal.App.2d at pp. 659-660.)

It is improbable that the instruction was coercive under the circumstances of this case. The jury had been fairly evenly divided on all counts. Thus the danger of exerting pressure on small minority blocs was completely absent. (Cf. *People* v. *Carter* (1968) 68 Cal.2d 810, 818-819 [69 Cal.Rptr. 297, 442 P.2d 353]; *People* v. *Smith* (1974) 38 Cal.App.3d 401, 406, fn. 2 [113 Cal.Rptr. 409].) Unlike *Beaugez,* the court never threatened to lock up the jury but actually told them that they were free to separate if they could not agree. The court never indicated its preference for a particular verdict. (Cf. *People* v. *Carter, supra,* 68 Cal.2d at p. 816.) Appellant's claim that the jury had probably objected to

continuing their deliberations on Monday, December 24, is mere speculation. In any event, this court may take judicial notice that the day before Christmas is not a holiday but is an ordinary working day for most people.

■ Appellant complains of being deprived of his right of allocution. Appellant's counsel, however, replied in response to the court's query that there was no legal cause why judgment should not be pronounced against appellant. This response satisfied appellant's right of allocution. (*People* v. *Cross* (1963) 213 Cal.App.2d 678, 680-682 [28 Cal.Rptr. 918].) The court, in its discretion, allowed appellant to speak on his own behalf. It was not an abuse of discretion for the court to interrupt appellant after finding his contentions unmeritorious.

■ Appellant's other contentions are also without merit. He complains that the prosecutor systematically excluded blacks from the jury by peremptory challenges. But the removal of prospective black jurors by peremptory challenge does not, in and of itself, establish a denial of equal protection. (*Swain* v. *Alabama* (1965) 380 U.S. 202, 221 [13 L.Ed.2d 759, 773, 85 S.Ct. 824].)

■ The trial court did not err in refusing to clear the courtroom. Penal Code section 868 has no application to the trial itself. A motion to clear the courtroom during a trial is not a matter of right but rests in the sound discretion of the trial court. (*People* v. *Guy* (1961) 191 Cal.App.2d 714, 719-720 [13 Cal.Rptr. 17].) No abuse of discretion is apparent from the record.

Appellant's allegation that the court improperly interrupted transcription of the proceedings is utterly without foundation.

■ Appellant was not denied effective assistance of counsel. The quality of defense counsel's impeachment of the victim is evident from the jury's failure to convict appellant on the rape and oral copulation charges. Counsel's failure to object to the alleged illegality of the search of appellant did not reduce the trial to a sham. Having observed that appellant resembled a robbery suspect, the officers had cause to make an investigative detention; the subsequent search was also clearly justified since J. E. told the officers that she had just been kidnaped and raped. The failure of counsel to make every available objection, however trivial, does not amount to incompetence. (*People* v. *Garrison* (1966) 246 Cal.App.2d 343, 350 [54 Cal.Rptr. 731].)

Appellant believes that hospital records and depositions of the doctor who examined J. E. would have been useful for impeachment purposes had they been received in evidence. There is no indication in the record, however, that such evidence would have been favorable to the defense. Appellant cannot now complain of error. (Evid. Code, § 354, subd. (a).)

The judgment is affirmed.

Caldecott, P. J., and Emerson, J.,* concurred.

A petition for a rehearing was denied April 8, 1976, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1976. Wright, C. J., Mosk., and Sullivan, J., were of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.