## Simmons v. Commonwealth.

(Decided June 6, 1924.)

### Appeal from Barren Circuit Court.

1. Criminal Law—Evidence Secured by Illegal Search Incompetent. —Evidence secured by an illegal search is incompetent.
2. Criminal Law—Searches and Seizures—One Seeing Liquors when Door Opened under his Knock Held Guilty of Unlawful Search.— An officer who legally knocked on a door for purpose of inquiring as to cause of noise somewhere in neighborhood, causing door to open and disclosing defendant asleep and moonshine whiskey in jars on a table, was guilty of an illegal search, and could not testify as to liquor, or introduce it in evidence under Constitution, section 10.
3. Arrest—When Peace Officer May Arrest Without Warrant Stated. A peace officer has a right to make an arrest without a warrant only when a public offense is committed in his presence, or he has reasonable ground for believing that person arrested has committed a felony.
4. Arrest—Public Offense Must be so Near that Officer Cannot be Mistaken as to Offender—"Presence."—In order for public offense to be committed in officer's "presence," it need not be within his sight, but it must be within his hearing, and so near to him that he cannot be mistaken as to offender.
5. Criminal Law—Evidence Held to Show no Offense Committed in Presence and no Reasonable Grounds for Believing Felony Committed.—Evidence held to show that no offense was committed

in presence of officer opening door of room and finding liquor therein, and that he did not believe a felony had been committed.

WHITE & SMITH, W. E. JONES and RODES & HARLIN for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE O'NEAL—Reversing.

Appellant prosecutes this appeal from a judgment of the Barren circuit court sentencing him to one year's confinement in the penitentiary upon a second conviction of the offense of unlawfully possessing intoxicating liquor. His sole ground of complaint is that the evidence establishing his guilt, and to which he objected and excepted when introduced, was incompetent because it was obtained by an illegal search in violation of section 10 of the Constitution of Kentucky.

Appellant's bad reputation for bootlegging was proven by numerous witnesses of high standing; his previous conviction of the same charge was shown by the court records and his guilt of the present offense was established by the testimony of the deputy sheriff who made the arrest. Appellant did not testify for himself or offer any evidence in his own behalf.

This court has repeatedly held that evidence secured by an illegal search is incompetent. In order to determine whether or not the evidence upon which appellant was convicted was illegally obtained it will be necessary briefly to review the facts.

But one witness, W. J. Combs, testified to the facts constituting the offense. He testifies that he was a deputy sheriff and night watchman in the city of Glasgow, and that about one o'clock in the morning on a certain day in January, 1924, while making his regular rounds as such night watchman, he heard a terrific noise, like something falling, about 100 yards distant from him. The noise sounded like breaking glass and he says he "reckons it was a flue fell on a roof." After hearing this noise he proceeded to his next post, where he punched the clock, and he then went on down towards the place from which he thought the noise came. As he was passing the home of a man named Johnson the latter called to him and asked what the noise was; he replied he didn't know and propounded the same question to Johnson and asked him

where he thought the noise came from. The latter replied that he thought it was down in the Hall. The Hall seems to be the nickname of a building used jointly as a Greek restaurant and for other purposes. He entered the Hall or building through an open door and walked on back in the building until he came to a room in which there was a light burning and which he knew to be the room of appellant. The door was pulled to and he knocked upon it, whereupon it opened as the result of the knock, and he then saw the appellant asleep in his bed and some seven or eight feet from him he observed two fruit jars containing half a gallon of moonshine whiskey. There was another jar on the table but it contained water, and he asserts he could distinguish the two by sight by reason of the fact that he claims water is clearer than moonshine whiskey. He thereupon entered appellant's room, and upon the latter's awakening, the witness asked him what the noise was, and he replied that he had been asleep and did not know; witness then asked appellant "what that (referring to the whiskey) meant setting over there on the table," and appellant replied "it was just there." Witness informed appellant he would have to take him and the whiskey, but appellant insisted he was sick and as he was already under bond, he would report the next morning. Witness consented to this arrangement, took the whiskey with him and left, and it is not contended that he made any further search for the source of the noise which he was investigating.

It is earnestly insisted for the Commonwealth that the witness in the performance of his duty as a peace officer in investigating the unusual noise which he heard, had a legal right under the circumstances to enter the building through the open door and to knock upon the door of appellant's room; that this being true, the fact that the door came open when he knocked upon it, thus disclosing appellant in the possession of moonshine whiskey, was not the result of an illegal act upon the part of the witness. With this we cannot agree.

The evidence is not clear as to the character of the building in question, whether open to the public or otherwise, but it is shown that it was occupied by a restaurant and was used for other purposes. Nor does it appear through what part of the building the witness entered and passed to reach appellant's room, but in the absence of any evidence to the contrary we may assume the witness was within his legal rights in entering the building

through the front door, which he states was open. It does not follow, however, that he had a right to force an entrance to appellant's room. While it is true, he states in effect, that he did not intentionally open the door into appellant's room, that he simply knocked upon it and it came open, yet whatever may have been his intention and however legal may have been his knocking upon the door, he did, in fact, force the door open and thereby obtain the evidence of appellant's guilt. That he did not have a right to force the door is apparent; he had no warrant and as a peace officer he had a right to make an arrest without a warrant only when a public offense was committed in his presence or when he had reasonable grounds for believing that the person arrested had committed a felony. We are satisfied from the witness' evidence that a public offense was not committed in his presence and that he did not have reasonable grounds for believing, and did not believe, a felony had been committed. In order for a public offense to have been committed in his presence, it need not have been within his sight but it must have been within his hearing and so near to him that he could not be mistaken as to the offender. Dilger v. Commonwealth, 88 Ky. 550. That he did not believe a felony had been committed and that a public offense had not been committed in his presence within the meaning of the law will be seen from the following excerpts from his testimony:

"Q. How far were you from where the defendant's room was when you heard this noise? A. Over here in front of Rich's store.

"Q. About how far is that? A. A hundred yards, I reckon.

"Q. What kind of noise was it? A. Sounded sort of like glass breaking or something, I reckon it was a flue fell on a roof.

"Q. What did you do when you heard the noise? A. I went to the Christian church and made my punch up there.

"Q. Punched the clock? A. Yes, sir. . . . After I made my punch I went down in front of Johnson's.

"Q. What for? A. To find out what the noise was.

"Q. What were you investigating, if anything. A. To see what the noise was, to find out what it

was; Johnson hollered out the window and asked me where it was and I asked him where did it sound to him like it was and he said in the hall.

. . . . .

"Q. If there was a thief there, were you looking for them? A. I was looking to see what the noise was, trying to locate that.

. . . . .

"Q. What did you do when you got to that building? A. Went back through the Hall.

"Q. Was that the place where you heard the noise? A. It was where Johnson said it sounded to him like it was.

"Q. Did it sound to you like it was there? A. Yes, sir.

. . . . .

"Q. What were you looking for when you knocked the door open—still investigating the noise? A. Yes, sir, I asked him when he woke up what that noise was.

. . . . .

"Q. Now, then, Mr. Combs, at the time you went there in this Hall around through this building and went in this room where you found this liquor, did you believe at the time the house was being broken into? (Objected to; objection overruled.) A. Yes, I thought somebody was breaking in from the noise and racket.

"Q. Was that what you were investigating? A. Yes, sir.

"Q. Is that the reason you went in this room? A. Yes, and I asked him that when I got in the room."

In spite of the leading and suggestive questions of the Commonwealth's attorney it will be seen from the above excerpts from the testimony that the witness entered the home of the appellant for the purpose, at most, of investigating the noise he had heard and not for the purpose of investigating a supposed felony. It is likewise perfectly patent that the noise which constituted the offense was not committed in his presence, for he stated that it was a hundred yards distant and he did not know where it came from. If justified in entering the room in which the appellant resided, he would have been equally justified on the same ground in entering any of

the other houses in that part of the city. Obviously this was a clear violation of the rights secured to the appellant by section 10 of the Constitution, which provides that:

> "The people shall be secure in their persons, houses, papers and possessions from unreasonable search and seizures."

Having reached this conclusion, it follows that the evidence so secured was incompetent, and appellant's objection thereto should have been sustained. There being no other evidence of appellant's guilt upon the trial of the prosecution, appellant's motion for a peremptory should likewise have been sustained, and for these errors the judgment must be reversed for a new trial consistent with this opinion.

Judgment reversed.