[Crim. No. 2498.  Second Appellate District, Division One.—March 29, 1934.]

THE PEOPLE, Respondent, v. EUGENE LAVENDER, Appellant.

584

Alexander L. Oster for Appellant.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

HOUSER, J.—Defendant appeals from a judgment which followed his conviction of the crime of robbery; also from an order by which his motion for a new trial was denied.

From the evidence adduced on the trial of the action, it appears that in the night-time, defendant, accompanied by another, induced a clerk in a hotel to show them a room therein, and that while so engaged defendant and his companion "held up" the said clerk, bound his hands at his back, gagged him, placed him on a bed in the room that he was "showing" to defendant, and tied the clerk's feet to one of the bedposts; whereupon defendant and his companion then and there temporarily left the clerk in such condition and situation. Immediately thereafter the clerk heard the ringing of a bell that was connected with a cash drawer in which some money that belonged to the hotel was kept in its office, which ringing was the usual result when the cash drawer was attempted to be opened by one who was unacquainted with the operation of the combination necessary to its successful opening. Shortly thereafter, defendant returned to the room where he had left the clerk, and by means of threats exerted by defendant, induced the clerk to give him the combination for the opening of the cash drawer. Later, when the clerk had succeeded in freeing himself from the bedpost and had secured assistance, by means of which his hands were unbound and the gag removed, he discovered that the cash drawer had been rifled of the sum of $13.15.

It is first urged by the appellant that the evidence was insufficient to support the judgment of conviction of the crime of robbery in that such evidence did not show, as required by the terms of section 211 of the Penal Code, that "accomplished by means of force or fear", personal property was feloniously taken from the person or the immediate presence of another, against his will, etc. More specifically, it is contended by appellant that since at the time the money was taken the clerk was not in the hotel

office where the said money was located, but to the contrary, was in a room in another part of the hotel, the property was neither taken from the person of the clerk, nor from his immediate presence.

▮ Particularly in view of the fact that no demurrer was interposed to the information by which defendant was charged with the commission of the offense of robbery, he is in no position now to urge any distinction or differentiation between the crime of robbery from the person and that of robbery from the immediate presence of another. (*People* v. *Matuszewski,* 138 Cal. 533 [71 Pac. 701]; *People* v. *Bryon,* 103 Cal. 675 [37 Pac. 754]; *People* v. *Dean,* 66 Cal. App. 602 [226 Pac. 943].) So that if it may be said that the crime was committed in the existence of either of such situations, a sufficient compliance has been made with the demands of the statute. (*State* v. *Williams,* (Mo. Sup.) [183 S. W. 308].)

. In robbery cases, with reference to what circumstances will constitute a taking from the person, in sections 1177 and 1178 of Bishop's New Criminal Law, where authorities in support of each of the several statements are cited, it is said: ''The meaning is, not that the taking must necessarily be from the actual contact of the body, but it suffices when only from under the personal protection''; and that the latter expression ''is interpreted to cover all one's personal effects within a not easily defined distance over which his presence may be deemed to have sway; as, says Hale, 'if a thief come into the presence of A, and with violence and putting A in fear drives away his horse, cattle, or sheep', he commits robbery. The better expression is that, employing this word in the meaning just explained, a taking in the presence of an individual put in fear is in law a taking from his person. Thus, one who binds another in one room of his house, and compels him to tell where valuables may be found in another room; or confines another to his smoke-house fifteen steps from the dwelling-house,—commits robbery by feloniously taking the sought-for things from the other room or building.'' See, also, *Rice* v. *State,* 204 Ala. 104 [85 So. 437]; *Hill* v. *State,* 145 Ala. 58 [40 So. 654].

In essential particulars, the facts in the case of *People* v. *Dean,* 66 Cal. App. 602 [226 Pac. 943], closely resemble those in the instant case. It was there held that the crime of robbery had been committed.

What significance is to be attached to the word ''presence'' has been the subject of inquiry by the courts of many different jurisdictions. Some indication regarding the indefiniteness, or what may be termed the flexibility, of the word is contained in the opinion in the case of *Nock* v. *Nock's Exrs.,* 10 Gratt. (51 Va.) 106, 117, where, in part, it was said:

''The meaning of the word 'presence' depends on the circumstances of each particular case. It is a word of which every man has something like a just idea, but which no man can accurately define. In fact, it implies an area which has no metes and bounds; but it is contracted or enlarged according as the attestation (of a will) occurs, as it certainly may, in a small chamber, or a spacious hall, a public street, or an open field. . . . The four walls of a room, whatever may be its size, so completely inclose its area, and exclude all improper influence from without, that whatever may be done within them may generally be said to be done in the presence of all who may be therein. Where presence exists, sight is unnecessary. Though a thing cannot be done in the sight, it may be done in the presence, of a blind man. Proximity and consciousness may create presence. A room, *ex vi termini,* denotes such proximity as is required to constitute presence; but there may be such proximity as well without as within a room. And wherever that proximity exists, and presence is created, it has the same effect as if the transaction occurred in the same room, and sight becomes unnecessary.''

In the case of *Carlton* v. *State,* 63 Fla. 1 [58 So. 486], it was ruled that: ''Where a person fires a pistol in a village, behind a cold drink stand within 100 yards of an officer's residence, it may fairly be said that the pistol was fired in the 'presence' of the officer, . . . ''

In the case of *State* v. *Blackwelder,* 182 N. C. 899 [109 S. E. 644], it was held that (syllabus): ''Where one heard hinge of his garage door creak, and, on going out, found the door open, he was warranted in arresting one in the

vicinity for an attempt to steal a car therein, and that without a warrant; the crime being committed in his 'presence' . . . ''

And in each of the following cases it was ruled that within-hearing distance of a person is within his presence: *Miles* v. *State,* 31 Okl. 4 [236 Pac. 907]; *State* v. *Koil,* 103 W. Va. 19 [136 S. E. 510]; *State* v. *Lutz,* 85 W. Va. 330 [101 S. E. 434]; *Simmons* v. *Commonwealth,* 203 Ky. 621 [262 S. W. 972].

And even where the person affected could neither hear nor see the commission of the acts in question, if by his sense of smell he became aware of the commission of such act, it was held that it was committed in his presence. (*State* v. *District Court,* 72 Mont. 77 [231 Pac. 1107].)

Referring to the case of *Clements* v. *State,* 84 Ga. 660 [11 S. E. 505, 20 Am. St. Rep. 385], the following is a copy of the syllabus thereof:

''While B. was in his smoke-house, about 15 paces from his house, defendant came up and said that, if B. put his head out, he would 'shoot it off'. While B. was thus detained, codefendant entered the house, and carried off valuables belonging to B., who did not know for what purpose he was being detained until defendant had left. *Held* a sufficient taking in the presence of B. to constitute robbery.''

In *State* v. *Calhoun,* 72 Iowa, 432 [34 N. W. 194, 2 Am. St. Rep. 252], the following instruction given by the trial court (and approved by the Supreme Court) sufficiently sets forth the facts and the law applicable thereto:

''It is not necessary, in order to constitute a stealing and carrying away 'in the immediate presence of said Nellie Baldwin', that it should have been done (if done) in her immediate view, or where she could see it done. And if you find from the evidence, beyond a reasonable doubt, that the defendant made a violent assault upon said Nellie Baldwin, by choking her and causing her to fall upon the floor of one of the rooms or apartments of her house, and then tied her hands and feet for the purpose and with the intention of stealing some money or property in the house; and you further so find that she, through fear of personal violence, told defendant where her money or watch was in an adjoining room or rooms; and you further so find that

thereupon defendant passed through a door or doors into such room or rooms, and did there, within hearing of said Nellie Baldwin, take and carry away from said room or rooms the property described in the indictment, or some part thereof; and you further so find that such property was under her immediate control, and that such taking, if any, was against the will of the said Nellie Baldwin, and was without any right, or claim of right, of defendant in said property, and with the intent to permanently deprive her thereof,—then and in such case there would be a sufficient stealing and taking from the *'immediate presence'* of the said Nellie Baldwin within the meaning of the law.''

In *State* v. *Kennedy,* 154 Mo. 268 [55 S. W. 293], wherein the evidence disclosed that the facts were that the defendants therein had forcibly entered an express car on a railway train and by violence had ejected therefrom the express agent thereof, and thereafter, after having divided the train, had taken the engine and the express car about one-quarter of a mile away from the remainder of the train, at which point the defendants blew open and rifled the safe contained within the express car,—it was held that although the express agent was not physically present at the time the safe was thus robbed of its contents, nevertheless he was constructively present at such time.

The facts in the case of *State* v. *Williams,* (Mo. Sup.) [183 S. W. 308], were similar to those in the instant case. It appears that the night operator and agent for a railroad company went from the ticket office around into the ladies' waiting-room, there being no door connecting the two, and while therein was shot by someone on the outside of the waiting-room. Shortly thereafter, he heard someone endeavoring to open the cash drawer in the ticket office. If an attempt was made to open this drawer without knowing the combination, a bell would ring. Later, it was found that the cash drawer, which had contained about $11, had been broken open and the money taken therefrom. In connection with the case on appeal, the defendant complained of an instruction which defined the words ''in the presence of'', as used in the statute, and by which instruction the jury was informed that if it found that the defendant committed an assault upon the agent and then took the money

in question from the ticket office while the agent was in a different room, the money was then and there in the immediate charge of said agent within the meaning of the statute, and that the same was taken in his presence. It was held that the instruction was not erroneous. For another case, that involves similar facts, see *People* v. *Sicks*, 299 Ill. 282 [132 N. E. 573].

But notwithstanding the practically universality of the rule that a robbery may be committed "in the presence" of the victim thereof, although in fact such victim is comparatively distant from the place where the actual taking of his property occurs, the attention of this court has been directed to no authority wherein the question of the significance to be attached to the words "immediate presence" of the victim is considered. The question here presented depends for its determination upon the meaning that should be ascribed to the word "immediate". An examination of Webster's New International Dictionary discloses the fact that the word is properly used in many different senses, and that in connection with location, the following statement is included:

" . . . Often, *Colloq.*, not far apart or distant; as, hidden in the *immediate* neighborhood; living in the *immediate* vicinity of one another. . . . "

It may thus be noted that, not unlike the word "presence", the word "immediate" is used relatively. In the case of a robbery, dependent upon circumstances or conditions present, the distance which properly might intervene between the victim thereof and the property taken from him might vary considerably. For example, if the employees in a bank had been "held up", and before any money was taken therefrom the employees were locked in a vault in which the books and records of the bank ordinarily were stored, but from which position the employees could hear the movements and operations of the robbers, could it be doubted that the taking was in the "immediate presence" of such employees? Or if the watchman in a warehouse should have been the victim of a "hold up", and after having been bound and gagged, should have been left at one end of the warehouse while the robbers thereafter proceeded to open and to rifle a safe located at the other end of the ware-

house, but within the hearing of the watchman, would it be seriously questioned that the robbery had occurred in the "immediate presence" of the watchman? If a large herd of cattle that was scattered for a mile or more on a plain was in charge of a cowboy, who was located on a hill or knoll where he might watch the cattle, was the subject of a felonious asportation by thieves, who preparatory to their nefarious work, had "held up" the cowboy, would it be contended that the crime was not committed in the "immediate presence" of the cowboy, and consequently that it did not constitute a robbery?

Now, since, as hereinbefore has appeared, from the fact that the victim may be able to see, or to hear, or to smell things that clearly indicate the commission of a robbery, his actual physical presence is not necessary to a compliance with the requirements of a statute that in order to constitute the crime of robbery, "presence" of the victim at the scene of the crime must be shown,—no good reason is apparent why his "immediate" presence thereat should not likewise be deduced. In other words, if in those jurisdictions where by statute mere "presence" of the victim is required, although the victim be comparatively distant from the place where the asportation of his property actually occurs, it is properly held he may be constructively present, and consequently that the requirements of the statute in that regard thus may be complied with, we are constrained to rule that, in view of the elasticity of the word "immediate", the facts of the instant case bring it within the meaning and intent of our statute, and consequently that, although the clerk of the hotel was not actually physically present in the office thereof at the time when the money in the cash drawer was taken therefrom by defendant, nevertheless, considering the other facts hereinbefore set forth, the clerk was constructively "immediately" present. At any rate, especially in view of the fact that the clerk could hear the operations of the robbers, if, as other facts of the case indicate, because of the felonious acts of defendant the clerk was prevented from being physically present at the scene of the robbery at the time of its actual completion, when otherwise the clerk would have been there, defendant should not be heard to raise the question as to

whether the clerk was or was not "immediately" present. At least as early as the time when the clerk was induced to leave the hotel office for the purpose of "showing" the room to defendant and his companion the crime of robbery was commenced; it was an overt act connected with the commission of the offense, at which time the clerk was "immediately" present. The trick or device by which the physical presence of the clerk was detached from the property under his protection and control should not avail defendant in his claim that the property was not taken from the "immediate presence" of the victim.

Appellant also suggests prejudicial error on the part of the trial court in its refusal to give to the jury, at the request of defendant, a specified instruction which related to the credibility that should attach to the testimony given by defendant, particularly in view of the fact that he had admitted that theretofore he had been convicted of a felony.

Since it appears that in determining the question of credibility of all the witnesses, the trial court fully instructed the jury regarding its power and its duty to consider all facts pertinent thereto, it is manifest that defendant has no just cause for complaint. It is a well-established rule that, in instructing a jury on this subject, the trial court should not direct special attention to the testimony given by any one witness, or set of witnesses. (*People* v. *Winters,* 125 Cal. 325 [57 Pac. 1067]; *People* v. *Ross,* 134 Cal. 256 [66 Pac. 229]; *People* v. *Quon Foo,* 57 Cal. App. 237 [206 Pac. 1028].)

Complaint is also made by appellant of alleged error which consisted in the fact that, in answer to questions propounded by the judge of the trial court, the prosecuting witness testified in substance that before the trial, but after defendant was arrested, the witness had identified defendant at the police station as the man by whom the witness had been "held up". However, the record shows that as to the main facts connected with such testimony, no objection to either of several questions which elicited the testimony in question was made by defendant; nor did defendant present any motion to strike the answers, or any of them, given by the witness to said questions. In addition thereto, immediately following the reception of such evidence, at the

request of the attorney who then and there represented defendant, the trial court instructed the jury "that they are entirely to disregard the questions of the court, and all other evidence relative to the identification of this defendant by any testimony given as to identifying him at the Georgia Street police station or any other place. Those questions are entirely irrelevant, incompetent, immaterial, and the jury will disregard it entirely."

Although as ruled in the case of *People* v. *Cotton*, 117 Cal. App. 469 [4 Pac. (2d) 247], the testimony in question was not properly admissible in evidence,—considering the entire circumstances connected with the incident, it cannot be held that thereby defendant was prejudicially affected in his substantial rights in the premises.

The judgment and order are affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 13, 1934.