[Crim. No. 40422. Second Dist., Div. Two. Feb. 23, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
ARMANDO LUNA MIRAMON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, William Blum and Russell I. Lynn, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Marc E. Turchin and Carol Slater Frederick, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BEACH, J.**—A jury found appellant guilty of burglary (Pen. Code, § 459) and robbery (Pen. Code, § 211). The jury also found to be true the allegations that appellant had used a knife in committing the two offenses (Pen. Code, § 12022, subd. (b)) and that he had served a prior prison term for a felony conviction (Pen. Code, § 667.5, subd. (b)). The trial court sentenced appellant to state prison.

Appellant appeals, claiming (1) improper instruction of the jury on the offense of robbery, (2) insufficient evidence to sustain the robbery conviction, (3) prosecutorial misconduct, and (4) improper sentence enhancement. We affirm.

## FACTS

At approximately 1:30 p.m. on September 16, 1980, Daniel Sherman unlocked the front door of his second-floor apartment at 1518 10th Street in Santa Monica. As he was about to enter, he noticed some marring on the weather-stripping of the door. Inside the apartment, the hall closet, which he always kept closed, was open. Alerted by noises coming from the bedroom, Sherman looked into the bedroom. He observed two Mexican individuals, a man and a woman, standing over his stereo, which was laid out on the floor. The man was appellant. Appellant had a knife in his hand. Sherman ran out of the apartment, yelling, "Call the police."

Sherman ran down the stairs and entered the first-floor apartment where his mother, sister and grandmother were living and which happened to be open at the time. He told them there was somebody in his apartment and to call the police. He then saw appellant and his female companion run down the stairs. The woman pulled a crowbar from her purse. She and appellant, followed by Sherman, who was soon joined by Ron Cheney, ran towards the 9th Street alley. At one point during the chase, appellant turned around, holding a knife in such a manner as if ready to use it. Sherman grabbed a bicycle because he feared that appellant would attack him with the knife. Others, including Sherman's brother Jim, joined in the chase.

Eventually, the pursuers caught appellant. In the ensuing struggle, Cheney removed the knife from appellant's hand, whereupon appellant pulled another knife out of his pocket. Sherman recognized the knife as one of the knives he kept in his hall closet. After taking the knife from appellant, the Sherman brothers and Cheney slit appellant's pockets open to make sure he had no other weapons on him. They found a gold chain, a watch, a silver bracelet, rings and more knives, all of which had been taken from the Sherman apartment. Shortly thereafter, the police arrived and took appellant and the woman into custody. Daniel Sherman went back to his apartment, accompanied by a police officer. Items which he usually kept in his bedroom closet were all over the floor. His pillowcase was stuffed with all his camera equipment and his clock radio. On the bed were his typewriter and tape deck, while his stereo receiver was on the floor. All of these items had been taken from their proper places. The television in the living room was unplugged, had a cord wrapped around it and the antenna disconnected, whereas it had been hooked up and in operating condition when Sherman left his apartment.

Fingerprints lifted from the apartment matched those of appellant and his female companion.

## DISCUSSION:

### 1. *The Giving of CALJIC No. 9.10*

██ Appellant contends the trial court improperly instructed the jury on the elements of robbery. Specifically, he complains that CALJIC No. 9.10, given as modified, was an inaccurate statement of the law.[1] Appellant objects to the addition of the phrase "the retention of property or the attempt to escape with such property from scene of commission" to CALJIC No. 9.10.

"In this state, it is settled that a robbery is not completed at the moment the robber obtains possession of the stolen property and that the crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property. [Citations.] [¶] Accordingly, if one who has stolen property from the person of another uses force or fear in removing, or attempting to remove, the property from the owner's immediate presence, . . . the crime of robbery has been committed." (*People* v. *Anderson* (1966) 64 Cal.2d 633, 638 [51 Cal. Rptr. 238, 414 P.2d 366].)

The challenged portion of the instruction given here conforms to the language of *Anderson*. Appellant, however, maintains that the instruction is distinguishable from *Anderson* because it makes no reference to the "immediate presence" requirement. That requirement did in fact appear as the second requisite element in the instruction.

### 2. *Sufficiency of the Evidence to Support the Robbery Conviction*

██ Appellant argues there was no evidence to show that the property belonging to Sherman which was later found on appellant's person had been taken from Daniel Sherman's immediate presence. Appellant points out that when Sherman surprised him in the apartment, he did not observe appellant

---

[1]CALJIC No. 9.10, as modified, reads in relevant part: "The crime of robbery is the taking of personal property in the possession of another, from his person or immediate presence, and against his will, acomplished by means of force or fear. [¶] In order to prove the commission of the crime of robbery, each of the following elements must be proved: 1. That a person had possession of property of some value however slight, 2. That such property was taken from such person or from his immediate presence, 3. That such property was taken against the will of such person, 4. That the taking, the retention of property, or the attempt to escape with such property from scene of commission was accomplished either by force or violence or by fear or intimidation or by both, and 5. That such property was taken with the specific intent permanently to deprive such person of the property." (Emphasis added; the underlined portion does not appear in the standard instruction.)

take any property, but only saw him stand over a stereo which was lying on the floor.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) ■ The "taking" of property from the victim's immediate presence and possession is not necessarily completed the moment the thief places his hands upon it. The offense of robbery also includes the element of asportation and appropriation of another's property. (*People* v. *Perhab* (1949) 92 Cal.App.2d 430, 438 [206 P.2d 1133].)

The "immediate presence" requirement is generally liberally construed. "Presence" depends on the circumstances of each case; it implies an area with no metes and bounds. (*People* v. *Risenhoover* (1968) 70 Cal.2d 39, 50 [73 Cal.Rptr. 533, 447 P.2d 925].) "Immediate" has been defined as being near at hand, not far apart or distant. (*Ibid.*) The act of robbery is deemed to have occurred in the victim's presence as long as the victim perceived any overt act connected with the commission of the offense. (*People* v. *Wiley* (1976) 57 Cal.App.3d 149, 160-161 [129 Cal.Rptr. 13], overruled on another point in *People* v. *Wheeler* (1978) 22 Cal.3d 258, 286 [148 Cal.Rptr. 890, 583 P.2d 748]; *People* v. *Lavender* (1934) 137 Cal.App. 582, 592 [31 P.2d 439].)

In *People* v. *Lavender,* the appellant induced a hotel clerk to show him a room, tied him up in there, and then went to another room where he took money from the cash drawer. In upholding the robbery conviction, the *Lavender* court stated: "At least as early as the time when the clerk was induced to leave the hotel office for the purpose of 'showing' the room to defendant and his companion the crime of robbery was commenced; it was an overt act connected with the commission of the offense, at which time the clerk was 'immediately' present. The trick or device by which the physical presence of the clerk was detached from the property under his protection and control should not avail defendant in his claim that the property was not taken from the 'immediate presence' of the victim." (*Id.* at p. 591.) ■ At bench, appellant's pulling of a knife when the victim surprised him in his apartment was an overt act connected with the commission of the offense, and perpetrated in the victim's "immediate presence." Upon seeing the knife in appellant's hand, the victim fled from the apartment, shortly thereafter followed by appellant who fled with jewelry and knives belonging to the victim. Assisted by others, the victim caught appellant minutes later.

We conclude that substantial evidence supports the conviction, that is, under the circumstances a reasonable jury could find beyond a reasonable doubt that

the robbery was committed in the immediate presence of the victim. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 579 [162 Cal.Rptr. 431, 606 P.2d 738].)

### 3. *Alleged Prejudicial Prosecutorial Misconduct*

■ Appellant assigns as prejudicial misconduct a number of remarks the prosecutor made during his closing argument to the jury. At trial, appellant failed to object to any of these remarks.

■ "[T]he initial question to be decided in all cases in which a defendant complains of prosecutorial misconduct for the first time on appeal is whether a timely objection and admonition would have cured the harm. If it would, the contention must be rejected [citation]; if it would not, the court must then and only then reach the issue whether on the whole record the harm resulted in a miscarriage of justice within the meaning of the Constitution. [Citation.]" (*People* v. *Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468].)

■ The challenged remarks were made in the following context: "I'd like to comment just briefly on the defendant's activities in court. And I am not commenting on these for purposes of showing that, in fact, he is a guilty person. That has absolutely nothing to do with the guilt of the defendant, and the court will so instruct you. [¶] However, I do want to comment on it only for the purposes of telling you my feelings about it. [¶] And my feelings are that it should not influence in any way during the course of your deliberations. [¶] On the surface, I suggest that his activities here in this court demonstrated that of what I would call a five-year old's. I don't think anybody can really argue with that. [¶] However, I think that even within the prior documents that we have here—when I say the prior documents the previous conviction—I think it supports, at least, an attempt to evoke your sympathy or somehow evoke some prejudice in this particular proceeding. [¶] I think the court documents indicate that originally at his trial he attempted to be co-counsel of his original trial in the federal court. [¶] He, in fact, asked questions at those particular proceedings. [¶] Further, there is a minute order in the prison document indicating that assertions apparently made by Mr. Miramon were apparently disbelieved by a federal court during the time he was in the federal penitentiary. [¶] These are not evidence of his guilty [*sic*]; however, the defendant realized, I believe, by his activity and his demonstration in court that he is, in fact, guilty, and he has been caught, after all, red-handed committing a burglary and a robbery. [¶] Now, if you will get around that—trying to prevent you from reaching a fair and just verdict in this particular case—I'd suggest he even denied you the courtesy of participating either directly through his own advocacy here or through the advocacy of an attorney, which he has a right to, to help you work with the facts as they have been presented to you. And in so doing, he has either just admitted to you that he is, in fact, guilty, or he is trying to subvert your positions as fact finders in this particular case."

Appellant claims generally it was improper for the prosecutor to comment on his courtroom behavior and specifically to make reference to his federal conviction. We note, however, that the jury had before it documentary evidence of appellant's federal prison term. Thus any comment on the evidence with respect to the federal conviction was necessary and proper as appellant had placed it in issue.

The clear effect of counsel's comments was to convey to the jury that although defendant had the opportunity by acting as his own lawyer to help the jury in ascertaining the facts, he prostituted that function and used it, primarily as a means of gaining sympathy in "an attempt to evoke some prejudice . . . in his favor." Appellant had been found competent to represent himself. He made a strategic election and the prosecutor had a right to comment on the nature of the defense.

Accordingly, there is no ground to excuse appellant from the general requirement of a timely objection, and the point must be deemed waived. (*People* v. *Green, supra,* 27 Cal.3d 1, 34-35.) Moreover, as respondent points out, "in view of the absolutely airtight case against appellant, it is simply inconceivable under any standard for harmless error that the result would have been different in the absence of the claimed improprieties." (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

### 4. *Prior Conviction*

Appellant contends it was improper for the trial court to use a prior federal conviction for bank robbery to enhance his sentence under Penal Code section 667.5, subdivision (b). The section provides in relevant part: ". . . where the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each prior separate prison term served for any felony; . . ." Subdivision (f) of that same section reads: "A prior conviction of a felony shall include a conviction in another jurisdiction for an offense which if committed in California is punishable by imprisonment in state prison provided the defendant served one year or more in prison for such offense in the other jurisdiction. A prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense which includes all of the elements of the particular felony as defined under California law provided the defendant served one year or more in prison for such offense in the other jurisdiction."

Documents presented to the trial court showed that the federal bank robbery statute under which appellant was convicted was 18 United States Code section

2113(a).[2] The first paragraph of that provision proscribes the taking by force and violence.

*People* v. *Plies* (1981) 121 Cal.App.3d 676, 679 [177 Cal.Rptr. 4] declares there is nothing in the wording of that part of the federal statute which describes as a part thereof an intent to permanently deprive the bank of the property taken. Such a statutorily expressed requirement appears only in the second paragraph of section 2113(a). That paragraph proscribes a person's entry into the bank with the intent to commit a felony or larceny. Thus, reasons the court in *Plies,* it is only the second paragraph of section 2113(a) which proscribes conduct that satisfies all the elements of felony burglary in California, whereas the conduct described in the first paragraph makes the forcible taking of property a felony even though such conduct would not amount to a felony robbery in California. (*Id.* at p. 679.) The *Plies* court concluded that under Penal Code section 667.5, subdivision (b) a trial court "lacks jurisdiction to enhance" a defendant's sentence for having suffered a prior felony conviction if the conviction was for federal bank robbery in violation of the first paragraph of section 2113(a), because, according to the *Plies* opinion, that provision does not require a specific intent to permanently deprive the victim. (*Id.* at p. 681.)

Appellant argues that under *Plies* the one-year enhancement imposed under Penal Code section 667.5, subdivision (b) must be stricken.

---

[2]18 United States Code section 2113 provides: "(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or [¶] Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union or such savings and loan association and in violation of any statute of the United States, or any larceny—[¶] Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

"(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or [¶] Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

Subparagraph (c) relates to receiving money or property taken from a bank and is not germane here.

"(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

The remaining paragraphs (e), (f), (g), and (h) relate to other provisions not germane to this discussion.

We do not agree. It appears to us that our colleagues' decision in *Plies* is founded upon an erroneous interpretation of *United States* v. *Klare* (9th Cir. 1976) 545 F.2d 93.

At bench the charge of the prior conviction stated that appellant " . . . was in the District Court of the United States for the Central District of California, convicted of a felony to wit, the crime of bank *robbery* by force, violence, intimidation and use of dangerous weapon; . . ." The jury in the present case found that allegation true, specifically finding "that defendant was convicted of a felony and served a prior prison term therefor, within the meaning of section 667.5(b) Penal Code to be true."

It is clear that appellant's prior conviction was under the first subparagraph of 18 United States Code section 2113(a). As to that type of prior conviction, *Plies* declares that such conviction would not be a felony robbery in California because of the absence of the element of specific intent to deprive the owner of his property, required as an element in California robbery. Relying thereon, appellant's argument accordingly is, as stated in *People* v. *Cheri* (1981) 127 Cal.App.3d 280 [179 Cal.Rptr. 423] on which appellant also relies, that the prior offense must be congruent in all elements with some specific felony (here robbery) as defined by California law.

In reaching its conclusion that conviction under the first paragraph of 18 United States Code section 2113(a) of the federal bank robbery statute was an insufficient basis for enhancement because of the lack of specific intent as a stated element therein, *Plies* relied on *United States* v. *Klare, supra,* 545 F.2d 93. The *Plies* court reasoned as follows: "Thus, the second paragraph of section 2113(a) proscribes conduct meeting every element of California felony burglary, while the conduct described in the first paragraph makes the forceable taking of property a felony even though under claim of right or other conditions which would not amount to a California felony robbery." (*People* v. *Plies, supra,* 121 Cal.App.3d 676, 679.) The *Plies* court went on to state: "We note also the cases clearly go in different directions as to whether the felonious forceable taking described in the first paragraph of section 2113(a) requires a specific intent to permanently deprive the victim, which would make it equivalent to the felony described in California's robbery statute, Penal Code section 211. In our view, the weight and most cogent authority is that no such specific intent is required. (*United States* v. *Klare* . . . .)" (*Id.* at p. 680.)

The broad language of *United States* v. *Klare,* if taken literally and applied in the same way as the court did in *Plies,* creates an interpretation and holding at odds with superior precedent established by the decisions of the United States Supreme Court. True, the language of *Klare* is broad. It includes the following statement: "Proof that an accused had a general intent to commit the acts pro-

scribed by statute is sufficient to sustain a conviction under the first paragraph of section 2113(a). This was our holding in *United States* v. *Porter,* 431 F.2d 7 (9th Cir.), *cert. denied,* 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 188 (1970). It is unnecessary to prove a definite purpose to deprive the bank permanently of its property, and in this respect a violation of section 2113(a) differs from common law robbery. [¶] It is true that in *United States* v. *Lilly,* 512 F.2d 1259 (9th Cir. 1975), we held that when robbery is the basis for a felony-murder prosecution, specific intent to steal must be shown. But in *United States* v. *Hartfield,* 513 F.2d 254 (9th Cir. 1975), we reaffirmed our earlier holding that a general intent is sufficient to convict under the first paragraph of section 2113(a). [¶] We note further that our rule is not without logical support. The statutory offense set forth in the first paragraph of section 2113(a) proscribes violent or intimidating acts; it is reasonable to conclude that Congress intended to punish persons who engage in such acts without requiring that the Government prove every element of common law robbery. *United States* v. *De Leo,* 422 F.2d 487, 490-91 (1st Cir.), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970)." (*United States* v. *Klare, supra,* 545 F.2d 93, 94.)

That language cannot be accepted as literally and as broadly as stated in *Klare* and as interpreted by *Plies.* To do so would compel the conclusion that the offense described in the first paragraph of 18 United States Code 2113(a) is a "strict liability" crime requiring no larcenous intent, i.e., that mental condition, sometimes called specific intent to deprive the victim of his property. To the contrary, 18 United States Code 2113(a) is not a "strict liability" crime and cannot be converted into such a crime. The superior and certainly final if not more cogent authority of the decisions of the United States Supreme Court clearly establishes that the first paragraph of 18 United States Code 2113(a) is, as were its predecessors, a robbery statute and that robbery is a form of larceny combined with use of force or fear and as known at the common law.

The United States Supreme Court has, through a long history of cases, established certain principles relating to federally recognized robbery: federal statutes which have described as criminal offenses the taking by force or by inducing fear have historically been recognized as defining a federal crime of robbery. Such robbery consistently has been recognized as the same crime which was known at common law. As such it requires that the mens rea of larceny be present. ■ There is no federal crime which involves larceny as a part thereof which can be committed without the particular larcenous intent. (*United States* v. *Gaddis* (1976) 424 U.S. 544 [47 L.Ed.2d 222, 96 S.Ct. 1023]; *Prince* v. *United States* (1957) 352 U.S. 322 [1 L.Ed.2d 370, 77 S.Ct. 403, 59 A.L.R.2d 940]; *Morissette* v. *United States* (1952) 342 U.S. 246 [96 L.Ed. 288, 72 S.Ct. 240]; *Jerome* v. *United States* (1943) 318 U.S. 101 [87 L.Ed. 640, 63 S.Ct. 483]; *Collins* v. *McDonald* (1922) 258 U.S. 416 [66 L.Ed. 692, 42 S.Ct. 326]; *Jolly* v. *United States* (1898) 170 U.S. 402 [42 L.Ed. 1085,

18 S.Ct. 624].) These and additional United States Supreme Court decisions confirm the policy of the federal law that "strict liability" crimes will not be created from those crimes which require a particular intent at common law. (*United States* v. *United States Gypsum Co.* (1978) 438 U.S. 422 [57 L.Ed.2d 854, 98 S.Ct. 2864]; *United States* v. *Bailey* (1980) 444 U.S. 394 [62 L.Ed.2d 575, 100 S.Ct. 624].

In *Morissette* v. *United States, supra,* the high court discussed at length the question of whether to "expand the doctrine of crimes without intent to include those charged here [taking government property]." The court explained: "Stealing, larceny, and its variants and equivalents, were among the earliest offenses known to the law that existed before legislation; . . . State courts of last resort, on whom fall the heaviest burden of interpreting criminal law in this country, have consistently retained the requirement of intent in larceny-type offenses. If any state has deviated, the exception has neither been called to our attention nor disclosed by our research. [¶] Congress, therefore, omitted any express prescription of criminal intent from the enactment before us in the light of an unbroken course of judicial decision in all constituent states of the Union holding intent inherent in this class of offense, even when not expressed in a statute. Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states . . . [will not be interpreted as inferentially] . . . eliminating intent from offenses incorporated from the common law." (*Morissette* v. *United States, supra,* 342 U.S. 246, 260-262 [96 L.Ed. 288, 299-300].)

The *Morissette* court continued: "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. . . . [M]ere omission from § 641[3] of any mention of intent will not be construed as eliminating that element from the crimes denounced." (*Morissette* v. *United States, supra,* at p. 263 [96 L.Ed. at p. 300].)

 The foregoing clearly demonstrates the misreading and misapplication by the *Plies* court that *Klare* is authority to support the conclusion that by not having *any* words relating to any intent in that part of the statute relating to robbery, Congress did away with the mental element altogether. To the contrary, as the United States Supreme Court observed: "In view of the care that has been bestowed upon the subject, it is significant that we have not found, nor has

---

[3]The statute being considered, 18 United States Code section 641, provided for punishment for the taking away of government property.

our attention been directed to, any instance in which Congress has expressly eliminated the mental element from a crime taken over from the common law." (*Morissette* v. *United States, supra,* at p. 265 [96 L.Ed. at p. 301]; *United States* v. *Bailey, supra,* 444 U.S. 394; *United States* v. *United States Gypsum Co., supra,* 438 U.S. 422.)

The first paragraph of 18 United States Code section 2113(a), as did its predecessors, describes robbery, a crime taken over from the common law. The United States Supreme Court has consistently defined, referred to, interpeted and discussed it as a "robbery" statute. (*Jerome* v. *United States, supra,* 318 U.S. 101; *Prince* v. *United States, supra,* 352 U.S. 322, 323 [1 L.Ed.2d 370, 371]; *United States* v. *Gaddis, supra,* 424 U.S. 544; *Heflin* v. *United States* (1959) 358 U.S. 415 [3 L.Ed.2d 407, 79 S.Ct. 451]; *Milanovich* v. *United States* (1961) 365 U.S. 551 [5 L.Ed.2d 773, 81 S.Ct. 728].) The statute does not punish an innocent but mistaken taking or conversion or taking-"under-claim-of-color." The robbery defined by the United States Supreme Court is that which requires criminal larcenous intent—whether the intent exists when merely entering the bank to commit robbery or is finally merged when the bank robbery is accomplished. (*Jerome* v. *United States, supra,* 318 U.S. 101; *Prince* v. *United States, supra,* 352 U.S. 322, 323.) As the high court stated in *Prince*: "[T]he heart of the crime is the intent to steal. This mental element merges into the completed crime if the robbery is consummated." (*Id.,* at p. 328 [1 L.Ed.2d at p. 374].) Further, "[W]hen Congress made either *robbery* or an entry for that purpose a crime it intended that the maximum punishment for *robbery* should remain at 20 years, but that, even if the culprit should fall short of accomplishing his purpose, he could be imprisoned for 20 years for entering with a felonious intent." (*Id.,* at p. 329 [1 L.Ed.2d at p. 374]; italics added.) In *United States* v. *United States Gypsum Co., supra,* 438 U.S. 422, 437 [57 L.Ed.2d 854, 869-870] the court stated: "Indeed, the holding in *Morissette* can be fairly read as establishing, at least with regard to crimes having their origin in the common law, an interpretive presumption that *mens rea* is required. . . . '[M]ere omission . . . of intent [in the statute] will not be construed as eliminating that element from the crimes denounced'; instead Congress will be presumed to have legislated against the background of our traditional legal concepts which render intent a critical factor, and 'absence of contrary direction [will] be taken as satisfaction with widely accepted definitions, not as departure from them.'"

The teaching of the foregoing is that although the portion of 18 United States Code section 2113(a) here in question does not use the words "robbery," "*intent* to steal," or "permanently deprive," it is a robbery statute. The robbery thus defined is robbery with its traditional and still present elements as known at common law and recognized as such by the Supreme Court. (*Jerome* v. *United States, supra,* 318 U.S. 101; *Prince* v. *United States, supra,* 352 U.S. 322.)

It thus follows that irrespective of the interpretation which the *Plies* court placed upon the *Klare* decision, it cannot be said that federal bank robbery as defined in 18 United States Code 2113(a) first paragraph, is a crime in which the element of larcenous intent is unnecessary. It is immaterial whether this larcenous element is spoken of as "mens rea," "intent," "general intent" or "specific intent." The language and holding of *Klare* must be read in light of and as limited by the United States Supreme Court cases discussed above.

It is of no significance that the federal statute does not use a term such as "with intent to steal." The statute forbids and punishes robbery. The decisional authority as indicated above has defined and fleshed out the statutory skeleton of robbery with recognition of the common law elements including intent. The same or parallel situation prevails in California. The statute, Penal Code section 211, makes no mention of larcenous intent. Rather, in language almost identical to the federal statute, it declares: " Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Similarly, California case law has defined the full scope of the offense by recognition of other required common law elements, including larcenous intent.

The point here is that the federal crime of robbery, of which appellant was convicted, contains all of the same elements as the California crime of robbery. The mental element is an element in each instance. It is the same mental element. Irrespective of the fact that California case law and jury instructions speak of a "specific intent," in practical reality the use of the word general intent in the federal cases such as *Klare* is not a reference to a different intent. It is a reference to the same mental element, the same mens rea. Such reference to general intent does not mean a general intent to merely commit an act which would result in a "strict liability" crime.

Thus, in *Klare,* the effect of defendant's intoxication on this capacity to form an intent was deemed irrelevant and jury instructions thereon refused, not because the crime did not require the intent to deprive the owner of property, but because from a common sense and highly probable view the commission of a violent act of forcefully taking from another or from within a federal bank is deemed sufficient proof, through the circumstance of committing the act, of the intent to larcenously take by violence. The intent is inherent in and manifested by the act. This is really not much different from acknowledging, as California does, that the "specific intent" to steal required in robbery may be proven by circumstantial evidence; the very nature of the violent taking manifesting the overwhelming probability of the presence of such intent. (*People* v. *Nichols* (1967) 255 Cal.App.2d 217 [62 Cal.Rptr. 854].) And even though a crime, whether under the federal statute or under the state statute, requires a particular intent in contradistinction to a "strict liability" crime, as explained in

*Morissette,* proof of knowingly committing an act which is traditionally an infamous crime is or may be sufficient proof of that intent. There is no need for further hair-splitting analyses of intent. (*United States* v. *Bailey, supra,* 444 U.S. 394.)

*United States* v. *Klare, supra,* 545 F.2d 93 must be limited to the facts of that case and must be interpreted to mean that for the purposes of finding a defendant guilty of robbery it is not necessary for a jury to be instructed to additionally find a separate mental factor defined as specific intent to permanently deprive when one commits a bank robbery.

*People* v. *Plies, supra,* 121 Cal.App.3d 676, 679 states that the first paragraph of section 2113(a) "makes the forceable taking of property a felony even though under *claim of right* or *other conditions* which would not amount to a California felony robbery." (Italics added.) That characterization has no support in any federal case law which our research has revealed, and is squarely contrary to the decision in *Morissette* and at odds with the other expressions by the United States Supreme Court relative to common law crimes and the interpretation placed on this particular statute discussed earlier. In addition, the idea is contrary to common sense and experience and has been specifically repudiated. (*Collins* v. *McDonald, supra,* 258 U.S. 416.) The idea is a conjectural possibility only by ignoring the United States Supreme Court's decisional law and by the most extreme semantic stretch. The *Plies* decision does not indicate the "other conditions" under which a person would take at gunpoint property belonging to a bank or others. We cannot envision a defendant putting a gun to the bank cashier's head in order to secure a loan. As the Supreme Court has stated, "Men do not feloniously put others in fear for the purpose of seizing their own property." (*Collins* v. *McDonald, supra,* 258 U.S. 416, 420 [66 L.Ed. 692, 696]; see also *Morissette* v. *United States, supra,* 342 U.S. 246.)

The essence of defendant's argument in *Collins* v. *McDonald, supra,* 258 U.S. 416, was strikingly similar to the argument made by appellant. The defendant-soldier was convicted by court martial under Articles of War which provided that any soldier who "commits robbery" shall be punished. Defendant claimed that robbery was not a federally recognized offense. The court answered: "The sufficient answer to this contention that the specifications do not charge any crime known to the laws of the United States is that § 284 of the Federal Criminal Code, providing for the punishment of robbery, reads: 'Whoever, by force and violence, or by putting in fear, shall feloniously take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years.'" (*Id.,* at p. 420 [66 L.Ed. at p. 696].) The teaching is that both the federal law and the state law have long recognized robbery as the same thing.

For the reasons stated above, we conclude that appellant at bench was in fact convicted of committing a federal bank robbery while armed and that such offense was a crime containing all of the elements of felony robbery as defined in California. The enhancement was therefore proper.

The judgment is affirmed.

Roth, P. J., and Gates, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 4, 1983.