[Crim. No. 14438.    Second Dist., Div. Five.    Feb. 6, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ANDREW
RICHARD PRUITT, Defendant and Appellant.

Paul A. Jacobs, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Edward J. Horowitz, Deputy Attorney General, for Plaintiff and Respondent.

REPPY, J.—This appeal is from a judgment of conviction of robbery in the second degree (Pen. Code, § 211), after a guilty verdict was returned by a jury. Defendant-appellant Pruitt contends that the trial court erred in failing to give instructions on circumstantial evidence and on lesser included offenses. There also is a purported appeal from an order denying motion for new trial. In the fact recital we give the substance of both the prosecution and defense versions of evidence pertinent to the first issue because we are concerned with the question which the trial judge faced of whether or not to give instructions relating to the use of circumstantial evidence. We also refer to certain procedural steps at the trial relating to this issue.

Prosecution evidence elicited on both d i r e c t and cross-examination of the witnesses showed the following circumstances: Between 9 and 9:15 p.m. on 8 January 1967 one Peter Carlson, then 71 years old, was walking on Alvarado Street in the City of Los Angeles. Carlson had a wallet, which had no money in it, in his inner left coat pocket, and he had a single one-dollar bill and some change in his right-hand pants pocket. At the place and time mentioned defendant came up

to Carlson, put his arm around him, dragged him in a driveway, "dumped him on the curb," "hit on him," and "sat on him." Having Carlson in this position, defendant grabbed his wallet. Carlson told him he had no money in it, and defendant handed it back to him. Then defendant ripped Carlson's pants with a key which Carlson had in a belt loop, making a 15-to-18-inch tear that paralleled the pocket. About this time a pedestrian, Radoicich, came along and saw what was occurring, observed a police car nearby, and ran to summon the officers. The defendant saw the police coming and ran away. When Carlson got up, the one-dollar bill was missing. He did not know what had happened to it. He was too excited to look on the ground for it after he got up. He did not know whether defendant had taken it or not. Two police officers came on foot to the scene and took a description of defendant from Carlson and Radoicich. Carlson didn't notice if the police looked for the one-dollar bill when they were there. Within a few minutes the officers apprehended defendant in an alley a short distance away from the scene of the offense. Defendant had stopped after being told to halt by the officers. Radoicich, from the scene of the occurrence, saw the officers apprehend defendant. Defendant was calm. Defendant was brought back to the scene of the offense, was identified by the victim and witness, and was arrested and searched. The searching officer found a lone, wrinkled-up one-dollar bill in defendant's right front pants pocket and $18 in neatly folded currency in defendant's left front pocket. Defendant also had some change some place on his person.

At the time of the offense, although the lighting was very good, neither Carlson nor Radoicich noticed anything unusual about defendant's face. However, the shirt which defendant was wearing struck Radoicich as unusual because it was striped silk, and he identified it at the scene when defendant was brought there by the officers.

Defendant denied categorically that he had attacked Carlson, had taken money from him, or even had seen him previously. In the course of direct and cross-examination, he also testified to these circumstances: He had been working at a produce market where he had earned $16 and he had been given a ride by a co-worker to a point near the scene of the occurrence. This was some distance from both his place of employment and his home. He had been in the alley for the purpose of urinating. At the time, in one pants pocket he had $18 or $19 in currency folded up. In the other pants pocket he

had two one-dollar bills and some change. At the time involved, he had 17 stitches in his face which had been placed there New Year's Eve and which followed his cheek bone down to the lower edge of his left jaw. The scar had not healed, resulting in a ridge of a thickness somewhere between a "kitchen match" and a "pencil." (It was stipulated that the 17 stitches were removed from defendant's face in the hospital ward of the Los Angeles County jail following his arrest in this case.) At the police station, when the police officer asked Radoicich if defendant was "the man," Radoicich replied that he didn't know but he looked like him; and when they asked Carlson a similar question, he replied in the affirmative but did not look at defendant.

After all of the evidence had been received outside of the presence of the jury, counsel for defendant requested the court to give CALJIC instructions Numbers 24 and 26 on circumstantial evidence. Counsel for the People objected on the ground that only a small portion of the People's evidence was circumstantial. The request of defendant's counsel was denied by the trial judge without explanation. Part of the record on appeal consists of three CALJIC instructions refused by the court, being Number 24 and two versions of Number 26.

CALJIC instruction Number 24 defines the two types of evidence, direct and circumstantial, and explains that either or both may be used by the trier of fact. CALJIC instruction Number 26 is a composite of the rules that *where the People's case rests substantially on circumstantial evidence,* a jury cannot find guilt unless the proved circumstances are not only consistent with guilt but cannot be reconciled with any other rational conclusion; that if the evidence is susceptible of two reasonable interpretations, one pointing to guilt and the other to innocence, the jury must adopt the latter; and that each fact essential to complete a set of circumstances necessary to establish guilt must be proved beyond a reasonable doubt.

Defendant's primary contention is that the trial court committed prejudicial error in failing to give the proffered instructions on circumstantial evidence. We reanalyze the facts to determine how much of the case of the People was direct evidence and how much was circumstantial and if the latter should be characterized as substantial.

We note that there were two episodes of taking when Carlson was assailed on the sidewalk which constituted the robbery, one involving the wallet and one involving the one-dollar bill. Because there was a general verdict of the jury

(no special verdict-interrogatories relating to the respective episodes having been requested) it must be assumed that the jury found appellant guilty with respect to both episodes. (*People* v. *Gayle*, 202 Cal. 159, 163 [259 P. 750].) Therefore, our inquiry into the question of whether the case of the People rested substantially on circumstantial evidence involves the entire occurrence encompassing both episodes. Obviously, the existence of the two episodes was also before the trial judge when he was making his decision whether to give the circumstantial evidence instructions.

The actual taking of the wallet by defendant was demonstrated by *direct evidence*, that is, visual observation, and probably a tactile appreciation, by Carlson. ■■■ Of course, the taking of the wallet from the person of Carlson, even though it was promptly handed back, constituted a robbery. (*People* v. *Salcido*, 186 Cal.App.2d 684, 686-688 [9 Cal.Rptr. 57] (and cases cited therein); see also *People* v. *Hall*, 253 Cal.App.2d 1051, 1053-1054 [61 Cal.Rptr. 676]; *People* v. *Smith*, 223 Cal.App.2d 431, 433 [36 Cal.Rptr. 165].)

In connection with the one-dollar bill episode both sides appear to take for granted that the original presence of the one-dollar bill in the pants pocket of Carlson and its nonpresence in that pocket after the encounter were shown by *direct evidence*. Doubtless it was considered that Carlson, by saying that it was there beforehand and not afterwards, was testifying, in effect, that he saw and felt himself placing it there beforehand and that he saw and felt it was not there afterwards. The use of force by the assailant was clearly demonstrated by *direct evidence*; Carlson saw and felt it. The discovery of the wrinkled dollar-bill in defendant's pocket was also shown by *direct evidence*—the observation of the officer.

Accepting the *direct evidence* that there was a one-dollar bill in Carlson's pocket before the encounter and the direct evidence that it was not there after the encounter, and taking the *direct evidence* that defendant tore open Carlson's pocket with the key, there are no other inferences possible than that defendant, by his action, intended to take anything of value in the pocket and that the one-dollar bill was caused to be ejected from the pocket by the ripping action of defendant. This momentary exercise of dominion over Carlson's one-dollar bill by defendant, even though it might have fallen to the ground immediately and become lost, constituted a robbery. ■■■ The "interference with the owner's possession

need be only for an appreciable interval of time, be it ever so short." (*People* v. *Dukes,* 16 Cal.App.2d 105, 108 [60 P.2d 197] (typewriter dropped out of case as defendant grabbed it).) "Asportation . . . may be fulfilled by wrongfully . . . removing property from the . . . control of the owner, . . . even though the property may be retained by the thief but a moment." (*People* v. *Quiel,* 68 Cal.App.2d 674, 679 [157 P.2d 446].) Thus, for all practical purposes this episode was entirely proved by *direct evidence.* The inference to be drawn from the finding of the wrinkled-up one-dollar bill in defendant's pocket (other than identity) only goes to the length of the period of control, and this longer period was not essential to the process of establishing that a robbery had occurred.

We feel that the prompt personal identification of defendant by Carlson and Radoicich was in the nature of *direct evidence.* The testimony is directly establishing the fact that the witness recognized defendant. The witness is testifying to what his memory faculties are registering, which is like telling about an outward observation.

Although not alluded to by defendant, we feel constrained to mention an aspect of the case where circumstantial evidence was involved. As to each of the episodes, circumstantial evidence was a factor in relation to the matter of *identity* of the assailant, which would have some significance because the defense was that defendant was not the perpetrator of the robbery, if one had occurred, and because defendant made an effort to weaken the People's identification evidence by testifying that neither Radoicich nor Carlson were positive in their identification and by establishing that each had failed to notice the stitches and scar on his face. A finding by the jurors that the crumpled one-dollar bill discovered in the pocket of defendant was the one-dollar bill taken from Carlson (an inference and therefore circumstantial evidence) would carry with it the finding that defendant was indeed the person who had robbed Carlson. The apprehension of defendant in the immediate vicinity in a matter of a few minutes also was circumstantial evidence with respect to identity. In addition, the defendant's testimony accounting for his presence in the alley, in one sense, could be characterized as circumstantial evidence because it could have been considered improbable, and from this it could have been inferred that defendant's alibi that he had not robbed, nor ever even seen, Carlson was false.

Conceding the aspects of circumstantial evidence above

discussed, but nonetheless bearing in mind the *entire occur-rence,* with the two episodes which constituted the robbery, the amount of the classic type of direct evidence applicable thereto, and the prompt personal identification of the appellant by both the victim and the witness, including the witness' recollection of the unusual shirt worn by the assailant, we have concluded that the case of the People did not rest substantially upon circumstantial evidence. Moreover, to the extent that testimony of defendant was part of the circumstantial evidence, it is apparent that the jury did not believe him. In this regard, apart from what the jurors probably derived from their consideration of his appearance and demeanor on the stand, they could have considered defendant impeached since he admitted to having been convicted of two prior felonies, one of which was ''bunco sales.''

In a Supreme Court decision wherein the recited facts are strikingly similar to those in our case (unseen removal of currency from the victim's pocket but inferred from discovery of a wad of crumpled currency in the defendant's pocket)[1] the opinion's author said that the trial judge did not err in failing to instruct the jury on circumstantial evidence, stating: ''It is the general rule that a trial court is not required to instruct on the rules of law applicable to circumstantial evidence where the alleged circumstantial evidence is incidental to, and corroborative of, direct evidence. [Citations.]

''. . . . . . . . . . . .

''It is clear that the evidence in the present case was pri-

---

[1] In detail, the fact recital is as follows:

''On November 22, 1959, at approximately 8:45 in the evening, Officers Russell and Sakoda were on duty riding in an unmarked police car in the vicinity of Stanford Avenue between Fourth and Fifth Streets in the city of Los Angeles. Seeing defendants struggling with Mr. Olgin, the officers stopped their car. At that time defendant Malbrough was standing behind Mr. Olgin, having his right arm wrapped around Mr. Olgin's neck and his left hand on Mr. Olgin's shirt front.

''Defendant Grant was seen running his hand over the front of Mr. Olgin's clothing, and defendant Malbrough was seen to step back and drop or throw Mr. Olgin to the sidewalk. Defendant Grant began running his hands over Mr. Olgin's clothing. Defendant Malbrough reached down and picked Mr. Olgin up, and defendant Grant placed his hands in both of Mr. Olgin's front pockets. Defendant Grant placed his right hand in his own right front pants pocket.

''Upon a search of defendant Grant, a wad of seven $1 bills was found in his right front pocket, together with some miscellaneous change. The bills had been crumpled as through they had been forced into the pocket. Mr. Olgin's wallet was found on the street by the foot of defendant Grant at the time of the latter's arrest.'' (*People* v. *Malbrough,* 55 Cal.2d 249, 250 [10 Cal.Rptr. 632, 359 P.2d 30].)

marily direct evidence. The evidence of guilt given by eye-witnesses to the crime was complete and convincing." (*People* v. *Malbrough, supra*, 55 Cal.2d 249, 250-251.)

Moreover, ". . . [T]he fact that instructions on circumstantial evidence were not given is prejudicial only when it is improbable that the jury would have reached the same result had the instruction been given." (*People* v. *Contreras*, 167 Cal.App.2d 288, 289 [334 P.2d 208].) We can say beyond any reasonable doubt that this is the posture of our case.

■ The second point urged by defendant is that the trial judge erred in refusing to give three instructions relating to lesser included offenses—(1) the instruction that stealing personal property from the person of another is grand theft (CALJIC No. 233-C) ; (2) the instruction that theft of property (or money) of a value of less than $200 is petty theft (defendant's special instruction) ; and (3) the instruction that defendant could be found guilty of grand theft (theft from the person) or petty theft as lesser included offenses of robbery (CALJIC No. 115-Revised).

Very substantial evidence, not contradicted by defendant (because he simply claimed he was not there) and obviously believed by the jurors, established that the taking of either the wallet or the one-dollar bill, or both, from the victim Carlson was a taking from his person, against his will, accomplished by means of force and fear. (Pen. Code, § 211—the crime of robbery.) The prosecution sought a conviction for robbery only. The defense was not that the crime was theft rather than robbery, but only that defendant was not the person who committed it. Under these circumstances the trial court committed no error in declining to give the instructions requested by defendant. (*People* v. *Griffin*, 36 Cal.App.2d 59, 61-62 [96 P.2d 989].)

The judgment is affirmed. The purported appeal from the order denying motion for new trial is dismissed.

Stephens, Acting P. J., and Aiso, J., concurred.