Filed 10/3/13  P. v. Garcia CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROGELIO LUIS GARCIA,<br><br>    Defendant and Appellant. | B242610<br><br>(Los Angeles County<br>Super. Ct. No. KA093956) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert M. Martinez, Judge.  Affirmed.

Kimberly Howland Meyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie C. Brenan and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Rogelio Garcia appeals from a judgment that sentences him to 11 years in state prison for making criminal threats, inflicting corporal injury on his girlfriend of six years and committing second degree robbery. Garcia contends there was insufficient evidence to support his conviction for those crimes. We affirm the judgment.

## FACTS

Garcia was charged in an information dated July 7, 2011, with making criminal threats in violation of Penal Code section 422 (count 1),[1] inflicting corporal injury to spouse/cohabitant/child's parent in violation of section 273.5, subdivision (a) (count 2), kidnapping in violation of section 207, subdivision (a) (count 3) and committing second degree robbery in violation of section 211 (count 4). The information further alleged that as to all counts, Garcia suffered prior convictions pursuant to sections 667, subdivisions (b) through (i), 667.5, subdivision (b) and 1170.12, subdivisions (a) through (d). As to counts 1, 3 and 4, the information alleged that Garcia had suffered prior convictions of a serious felony pursuant to section 667, subdivision (a)(1). A jury trial commenced on February 22, 2012.

At trial, the prosecution presented evidence that Garcia assaulted and threatened Jane Doe, with whom he had a six-year relationship. Doe was reluctant to testify against Garcia, stating, "I'm afraid something can happen. I don't want anyone to get in trouble." Indeed, Doe had previously told police that she did not want to prosecute, indicating that she was frightened that Garcia would hurt her in retaliation for prosecuting him. Doe also wrote four or more letters to the court and police asking the charges against Garcia be dropped. When she was called to the stand by the prosecutor, Doe testified that she could not recall anything of the night in question. As a result of Doe's unwillingness to testify, the prosecution presented evidence of the relevant events primarily through hearsay statements made by Doe to the police officers investigating the incident, as set forth below.

---

[1]     All further section references are to the Penal Code unless otherwise specified.

2

On April 12, 2011, Arcadia police were dispatched to the corner of Santa Anita and Duarte at 2:15 a.m. Officer Brian Long testified that he observed Garcia sitting on the curb and Doe sitting in her car when he arrived. Garcia and Doe told him that they had been arguing but there was no physical altercation and Long did not see any injuries on Doe. As a result, he allowed them to leave; Doe drove off in her car and Garcia walked away on foot.

At approximately 3:49 a.m., Officer Juan Casados from the El Monte Police Department was flagged down by a woman standing with Doe at Garvey and Tyler. Doe was holding Julia, her daughter with Garcia. Doe appeared to be "distraught" and she was bleeding from the right side of her eye. Officer Casados called for assistance. Officer Benjamin Lowry interviewed Doe in the back seat of his patrol car. He noticed the right side of Doe's face was swollen and there was a cut on the corner of her right eye, which was bleeding. She was crying and appeared "terrified." Doe told Lowry that she drove home after the encounter with Officer Long in Arcadia. When she arrived home, she began receiving phone calls from Garcia. He told her not to call the police and threatened, "You better come pick me up or I'm going to kill you." He later called to say, "I'm a block away and I'm going to kill you." Because she had been assaulted regularly throughout their six-year relationship, Doe believed he would harm her and she immediately tried to leave with her daughter. However, Garcia stood in her driveway blocking her car as she tried to back out.

Doe then told Officer Lowry that Garcia got into the passenger seat and punched her in the face and head approximately 10 times. He also threw her phone out of the car. He ordered her to take him to his mother's house on Tyler. When they arrived, Garcia punched her in the face three more times and took her purse and keys. Doe fled down the street with her daughter, abandoning the car. Officer Lowry later escorted Doe back to where her car was parked on Tyler and she retrieved her purse and car keys from inside the car.

Investigators hired by defense counsel interviewed Doe on January 31, 2012. She told the investigators that she had been drinking heavily that night and denied Garcia threatened her or took her purse or money. She explained that she was drunk that day and hit her head in the shower around 8:00 p.m. that evening. She then drove to meet Garcia at his residential drug program in Sylmar. When she arrived, he was with another woman, Angelica Maria. Doe became angry and drove home. She denied that he hurt her or threatened her. She explained that she accused Garcia of threatening her and hurting her because she was "mad and jealous that he cheated and he gave me an STD."

Transcripts of recorded phone calls between Garcia and Doe while he was in jail were also admitted into evidence. In one, Doe told Garcia that her jaw still hurt. She complained that "the right side of my head is still swelling and I'm gonna have a scar on my face. [¶] I've done nothing but help you and be supportive and all you ever did was attack and hurt me." Garcia replied, "You're right . . . I know that . . ." In another call, Doe said, "I think you're gonna kill me for sure next time. You have it in you . . ." Julia then spoke with Garcia and told him, "Daddy, you hit me." In a separate call, Doe told Garcia, "I honestly can't, can't see a future with you cause I'm afraid for my life. I think you would hurt me and you have no reason to." Garcia acknowledged his mistakes, saying, "I know I deserve where I'm at . . . I crossed the fucking line. I crossed the line; this time." Garcia also admitted he was trying to scare and intimidate Doe.

In another transcript, the following conversation occurred between Doe and Garcia:

"[Doe]: Every time you hit me . . . [¶] And I still feel the pain of it.

"[Garcia]: That part I did. That's what I'm telling you. I know I crossed the line.

"[Doe]: "It's not the first time. Don't act like it's the first time. You've abused me many, many times in the past. Every time you get around your friends, you, either your sister, you[r] friends, whoever, you always act like a complete stranger to me."

Doe also asked Garcia, "What happened with my money that you took from my wallet?" Garcia admitted it was in his room or "should be in my locker."

4

Doe, Garcia and Angelica Maria, his ex-girlfriend, testified for the defense. Garcia explained that he, his sister, Carmela, and Maria were drinking in Maria's car on April 12. Doe became upset when she arrived with Julia. Garcia tried to calm her down without success. He then drove off with Maria and his sister to go to his mother's house. Doe followed them, trying to cut them off on the 210 freeway. When Garcia noticed that Julia was out of her car seat while they were driving on the freeway, he told Maria to exit so he could get into Doe's car. Doe and Garcia then argued about mutual previous infidelity and he demanded she stop so he could get out of the car. It was at this point that Arcadia police arrived and interviewed them. When Doe and the police left, Garcia began to walk towards Doe's house. He admitted he called her while he was upset, but only to ask her to pick him up.

When he neared her home, she picked him up to drive him to his mother's house two miles away. They continued to argue and when they arrived at his mother's home, Doe told him that Julia was not his biological child. He slapped her and pulled her hair. Doe became hysterical, grabbed Julia and abandoned the car. Garcia then walked to his cousin's house, three doors down, and spent the night there. Garcia explained that the $20 referenced in the jailhouse call was about money he owed her, not money he had taken from her purse that night.

Maria testified that she drove Garcia to his mother's house where Doe discovered them. Doe began to argue with Garcia and then left on foot with Julia. Garcia then went to his cousin's house with Maria. Maria denied Garcia hit Doe. Garcia acknowledged that Maria's testimony differed from his and stated that parts of it were untrue.

Doe was called by the defense to confirm she asked the district attorney's office not to prosecute the case. On cross-examination by the prosecutor, however, Doe admitted that Garcia hit her and threw her phone. She also testified that she took him to his mother's house and when they got there, he hit her again with closed fists and then took her purse, her wallet, and her car keys.

The jury found Garcia guilty for making criminal threats, inflicting corporal injury and committing second degree robbery. The trial court found all special allegations to be

5

true. Garcia was sentenced to the mid-term of three years, doubled under section 1170.12, subdivisions (a) through (d), plus five years under section 667, subdivision (a)(1) for the corporal injury count. He was also sentenced to a concurrent term of two years, doubled under section 1170.12, subdivisions (a) through (d), on the criminal threats count and a concurrent term of three years, doubled pursuant to section 1170.12, subdivisions (a) through (d) on the second degree robbery count. The court ordered the one-year prior conviction allegations under section 667.5, subdivision (b) to be stricken. Garcia was sentenced to a total of 11 years in state prison. He timely appealed.

## DISCUSSION

On appeal, Garcia challenges his conviction for inflicting corporal injury on a spouse/cohabitant/child's parent and for second degree robbery on lack of sufficient evidence. He does not challenge his conviction for making criminal threats. We find substantial evidence supports the convictions.

In determining whether substantial evidence supports a conviction, a reviewing court examines the evidence in a light most favorable to the jury's verdict and presumes the existence of every fact the jury could reasonably deduce from the evidence. (*People v. Crittenden* (1994) 9 Cal.4th 83, 139.) The same standard is applied here where the prosecution's case primarily relied on circumstantial evidence or admissible hearsay evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396; *People v. Green* (1971) 3 Cal.3d 981, 985.) A reviewing court may not upset a jury's verdict based on a claim that it is not supported by substantial evidence unless it appears that upon no hypothesis is there sufficient evidence to support the conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) A reviewing court may not reweigh the evidence nor re-assess the credibility of the witnesses. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.)

## I.    Corporal Injury

Section 273.5, subdivision (a) prohibits any person from "willfully inflict[ing] upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic

6

condition . . ."  Garcia argues that the evidence was insufficient to establish that he is a cohabitant or former cohabitant with Doe or that he is the father of her child.

We find substantial evidence supports the conclusion that Garcia is the father of Doe's daughter.  Section 273.5, subdivision (d) defines "father" as someone who is a presumed father under sections 7611 and 7612 of the Family Code.  Among other things, Family Code section 7611, subdivision (d) provides that a man is presumed to be the natural father of a child if "[h]e receives the child into his home and openly holds out the child as his natural child."[2]

Garcia contends that the paternity requirement cannot be met because Doe admitted he was not Julia's biological father.  For purposes of section 273.5 and Family Code section 7611, that is irrelevant.  Subdivision (d) of section 273.5 applies to a biological father as well as "to a presumed father, that is, a man who has entered into a family relationship with the mother and child, regardless of whether he is the biological father."  (*People v. Vega* (1995) 33 Cal.App.4th 706, 711.)  There was substantial evidence that Garcia openly held the child as his natural child and received the child into his home.  Garcia testified at trial that " no matter what to me Julia's still my daughter . . ."  He continuously referred to her as "my daughter" during his testimony and Julia called Garcia "daddy."  Garcia also told Doe he loved her and that she and Julia are his life.  He also told Doe that she and Julia "are the ones I wanna live for."  That is substantial evidence of Garcia's status as Julia's father.

## II.     Second Degree Robbery

Robbery is the felonious taking of personal property in the possession of another from his person or immediate presence and against his will, accomplished by force or fear.  (§ 211; *People v. Nichols* (1967) 255 Cal.App.2d 217.)  At trial, the prosecution argued that Garcia committed robbery by throwing Doe's cell phone out of the car

---

[2]     Family Code section 7612 identifies circumstances under which the presumption may be rebutted, such as when a man files a petition to set aside a voluntary declaration of paternity.  The circumstances identified in Family Code section 7612 do not apply here.

window near her house and by taking her purse and her car keys away from her during their fight in front of his mother's house. Garcia argues the evidence was insufficient to establish he committed a robbery because there was no evidence that he had the intent to deprive Doe of her property or that Doe resisted. We disagree.

Substantial evidence supports a finding that Garcia committed second degree robbery when he threw Doe's mobile phone out of the car and took her purse and keys. Doe testified that Garcia had just arrived at Doe's home after threatening to kill her and telling her not to call the police. When he grabbed her phone and threw it out of the window, he asked if she had called the police already. He then punched her in the head approximately 10 times. Doe also told Officer Lowry that she had her purse on her shoulder and the keys were in the ignition when Garcia took them. He said, "Let me show you what it's like to be helpless and stranded." He also punched her in the face. The record supports a finding that Garcia had the requisite intent to deprive Doe of her property and that he did so against her will and through force. That Doe may have retrieved her purse and keys after Officer Lowry escorted her back to her car is irrelevant. (*People v. Pruitt* (1969) 269 Cal.App.2d 501 [forcible taking of a wallet from the person of a victim against his will constituted a robbery even though it was promptly handed back].)

## DISPOSITION

The judgment is affirmed.

BIGELOW, P. J.

We concur:

FLIER, J.

GRIMES, J.

8