Filed 10/17/14  In re Daniel D. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re DANIEL D., a Person Coming Under the Juvenile Court Law. | B249575<br><br>(Los Angeles County Super. Ct. No. GJ29641) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL D.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert Leventer, Juvenile Court Referee.  Affirmed.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Daniel D., a minor, appeals from an order adjudicating him a ward of the juvenile court under Welfare and Institutions Code section 602.[1] He contends there was insufficient evidence to support the juvenile court's finding that he committed second degree robbery against his father, Jon D. Finding no error, we affirm.

## PROCEDURAL HISTORY

In a section 602 petition filed on February 20, 2013, appellant was charged with second degree robbery of Jon D. (Pen. Code, § 211). After a two-day adjudication hearing, the allegations of the petition were found to be true.

On May 2, 2013, the disposition hearing was held. Appellant was declared a ward of the court with a finding that the second degree robbery offense was a felony. The aggregated maximum term of physical confinement was determined by the court to be six years and four months. Appellant was credited with 298 days of predisposition custody.

Appellant filed a timely notice of appeal from the dispositional order.

## FACTUAL BACKGROUND

A.      *The Prosecution Case*

At the adjudication hearing, appellant's father, Jon D., testified that on February 19, 2013, appellant asked to borrow Jon's debit card because he needed money. Jon refused, telling appellant he would give him some money but would not let him use the card. Appellant insisted, however, and obtained the card. Jon

---

[1]      All further statutory citations are to the Welfare and Institutions Code, unless otherwise stated.

was unable to recall whether appellant took the card from Jon's billfold or whether he gave the card to appellant.

After appellant went to take a shower, Jon called 911. According to Jon, he called 911 because (1) appellant had violated his probation and Jon was afraid appellant might run away and get into trouble, and (2) Jon wanted his card back quickly. When Jon called 911, he said that appellant was "on the run from probation" and had outstanding warrants. He also stated that appellant was sober but needed psychiatric help, and that appellant would claim he had a weapon when he actually did not have one. Jon told the 911 operator that appellant had Jon's credit card and was going to leave the residence in five minutes. Jon also stated that appellant was "very big and very strong," and expressed concern that appellant was "gonna tear this place up" and that "he'll beat the crap out of me if he sees me on the phone."

When police officers responded to the scene, they interviewed Jon. The police interview was recorded, and the audio recording played at the adjudication hearing. During the interview, an officer asked, "Did you give him your card willingly?" Jon responded, "I gave him my card because I was terrified." Subsequently, the following exchange occurred:

"Officer 2: What started off today? Because we got a report that he stole a credit card from you. Did he steal a credit card from you?

"Dad: Yeah he took it from me. I handed it to him before . . . I'm five foot six . . . we had a fight (inaudible).

"Officer 2: Did you tell him [']no you're not taking it[']?

"Dad: I told him three times [']no I don't want to give it.['] He took the card from me out of my billfold and said [']what are the numbers[?], you know the code.[']

3

"Officer 2:  So you're saying that he intimidated you?

"Dad:  Yes.

"Officer 2:  With threat of force?

"Dad:  Yes.

"Officer 2:  Did he threaten you in any way unless you do this?

"Dad:  Yeah [']I'm gonna tear this place up and you'll be sorry.[']

"Officer 2:  Okay so he specifically said unless you give that card [']I'm going to tear up the house[']?

"Dad:  Yep.

"Officer 2:  And damage your property.

"Dad:  Yes.

"Officer 2:  Yes he said that or you just agree with me?

"Dad:  No he said that not quite those words.

"Officer 2:  What exactly did he say?

"Dad:  He said [']I'm going to tear this place up and you're going to be so sorry if you don't give me this card.[']  And I know he's capable because he's done it before.

"Officer 2:  When you say tear it up what does he do?

"Dad:  He broke out all, uh a bunch of windows, breaks furniture, knocks holes in walls."

Jon also told the officers that appellant was a "master manipulator," who was stalling and hoping that the police would give up and leave.  An officer stated that appellant was "absolutely right," but that the police could "take" him, if Jon was willing to prosecute.  Jon replied, "I can't back out of this."  He also stated, "If you guys walk out of here, I don't want to be here.  I don't want to be around him because he will tear this place up and possibly even injure me.  I don't know if he

4

would or not but he does love me but he's also (inaudible).  He's had a lot of problems and I'm worried for him . . . ."

The officers then spoke to appellant before returning to speak with Jon.  The following exchange occurred:

"Officer 2:  With his left hand he put it on your shoulder and with his right hand he says [']give me that card.[']

"Dad:  Yay, [']give me the number.[']

"Officer 2:  And you felt like he was going to punch you[.]

"[¶]  . . . [¶]

"Dad:  I caved in[.]

"Officer 2:  You gave him the card?

"Dad:  Yes[.]

"Officer 2:  and he demanded the pin number[.]

"Dad:  He had the card already[.]

"Officer 2:  Oh he had the card[.]

"Dad:  Well he took it out of my belt buckle."

At the hearing, Jon testified that appellant had his left hand on Jon's shoulder and was vigorously pointing with his right hand.  Appellant did not make a fist with the right hand.  Jon also stated that he did not want to testify at the adjudication hearing because he felt that the incident had been "blown way out of proportion."  According to Jon, he had been convinced by the police officers that if he did not say the "exact words they wanted me to say, they couldn't help my son."

Jon acknowledged that in May 2012, he reported to the police that appellant had forcibly taken a credit card from him and used it to withdraw a lot of money.  Appellant had pinned Jon to the bed while trying to reach under the mattress for

5

Jon's billfold. Jon was fearful and eventually gave appellant the pin number to the credit card. During this time, appellant was high on drugs and out of control.

In 2012, appellant was about 6 feet, one inch and weighed at least 230 pounds. Jon was 5 feet, 6 inches and weighed 158 pounds. He was 68 years old at the time of the robbery.

B. *The Defense Case*

Appellant did not testify. The parties stipulated that if called to testify, Officer Penaranda would state that he was one of the officers who arrived at the scene. Upon encountering Jon, the officer was told that appellant had broken probation and that Jon wanted him detained. Penaranda confirmed that appellant was on probation, but found no outstanding warrants.

**DISCUSSION**

Penal Code section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." "The taking element of robbery itself has two necessary elements, gaining possession of the victim's property and asporting or carrying away the loot." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165 (*Cooper*).) "In order to support a robbery conviction, the taking, either the gaining possession or the carrying away, must be accomplished by force or fear." (*Id.* at p. 1165, fn. 8.) "'Gaining possession or . . . carrying away' includes . . . deterring a victim from preventing the theft or attempting to immediately reclaim the property." (*People v. Flynn* (2000) 77 Cal.App.4th 766, 771.) Appellant contends the evidence presented to the juvenile court failed to

6

establish both the "taking" and the "force or fear" elements of the crime of robbery.

We apply the same standard of review to a juvenile court's finding of criminal conduct by a juvenile as to a conviction of an adult defendant. (See *People v. Nguyen* (2009) 46 Cal.4th 1007, 1019 [minor accused of criminal conduct for which he may be imprisoned entitled to virtually all procedural rights and protection of adult criminal defendant].) Thus, in determining whether sufficient evidence supports the juvenile court's finding of criminal conduct, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224, italics omitted.) Under this standard, "the reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*Ibid*.) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Here, there was substantial evidence in the record to support the juvenile court's finding that appellant committed robbery. Appellant gained possession of Jon's debit card from his person and against his will. The evidence demonstrated that appellant either forcibly took the card from Jon's billfold or that Jon handed

the card to appellant against his will. (See, e.g., *People v. Pruitt* (1969) 269 Cal.App.2d 501, 505 [taking of wallet from the person of the victim, even though it was promptly handed back, constituted robbery]; *People v. Phan* (1993) 14 Cal.App.4th 1453, 1458, 1466 [affirming robbery conviction where victim removed wallet and gave it to defendant who had pointed gun at victim and said "Where's the money?"].) Appellant then asported or carried the debit card away when he left the room to take a shower. (See *Cooper*, *supra*, 53 Cal.3d at p. 1165 [asportation requirement satisfied by evidence of slight movement]; *People v. Pham* (1993) 15 Cal.App.4th 61, 65 [same].) Thus, there was sufficient evidence to establish the "taking" element.

Likewise, substantial evidence established the "force or fear" element. Jon told the police that he gave the card to appellant because he was "terrified." He also stated that appellant had demanded the card and pin number, and that appellant had intimidated him by threat of force. Jon stated that he "caved in" to appellant's demands because appellant had threatened to tear up the residence -- a threat Jon believed, as appellant had done so before. Thus, the evidence demonstrated that appellant secured possession of Jon's debit card through fear or threat of force.

Appellant argues that Jon's testimony at the adjudication hearing supported a finding that Jon was not afraid of appellant, but rather, that Jon was afraid that appellant would not be detained and would get into trouble. Resolution of any conflict or inconsistency in a witness's testimony, however, is the exclusive province of the trier of fact. This court does not resolve credibility issues. (*People v. Young*, *supra*, 34 Cal.4th at p. 1181.) In sum, substantial evidence supported the juvenile court's finding that appellant robbed Jon of his debit card.

## DISPOSITION

The  order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

9